UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO: 5:23-cv-00235-FL

**Jane Doe (L.M.), an individual**

Plaintiff

v.

**42 HOTEL RALEIGH, LLC d/b/a
HILTON HAMPTON INN, HILTON
HOTELS CORPORATION, PARK
HOTELS & RESORTS INC f/k/a HILTON
WORLDWIDE INC and HAMPTON INNS
LLC**

Defendants.

**FIRST AMENDED COMPLAINT
JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff Jane Doe (L.M.), by and through the undersigned counsel, and respectfully submits her first amended complaint for damages and makes the following averments.

**SUMMARY**

1. As sex trafficking has grown to epidemic proportions, it has become widely recognized that we must look beyond just the pimp and sex buyer in order to stop sex trafficking. We must look to the other individuals and entities who facilitate and benefit from sex trafficking.

2. The facilitation of sex trafficking is unlawful under federal law. The Trafficking Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq*, expands trafficking liability beyond the sex seller and buyer to also prohibit individuals or entities from knowingly benefiting or attempting to benefit "financially or by receiving anything of value from participation in a venture which that person knew or should have known" was engaged in trafficking.

1

3. This case is about the continuous sex trafficking of L.M. that occurred at a Hampton Inn located at 1001 Wake Towne Dr, Raleigh, NC 27609 ("Hampton Inn"). Hampton Inn was owned and operated by Defendant 42 Hotel Raleigh, LLC, as a franchisee of Hilton Hotels Corporation.

4. As discussed herein, each of the defendants in this case knowingly benefitted from participation in a venture that facilitated trafficking and ultimately, L.M.'s trafficking at the subject Hampton Inn. Accordingly, L.M. brings suit under the TVPRA.

## JURISDICTION & VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

7. L.M. was trafficked in this District and Division.

## PARTIES

8. L.M. is a natural person who is currently a resident and citizen of North Carolina.

9. Defendant 42 Hotel Raleigh, LLC ("42 Hotel") d/b/a Hampton Inn is a duly qualified and licensed limited liability company in the State of North Carolina. It can be served by its registered agent National Registered Agents, Inc., 160 Mine Lake Ct Ste. 200, Raleigh, NC 27615.

10. Defendant Hilton Hotels Corporation is a North Carolina corporation with its principal place of business in North Carolina. It can be served by its registered agent Domi Valhalla, 135 Hawkeye Drive 7B, Red Springs, NC 28377. Defendant Park Hotels & Resorts Inc. f/k/a Hilton Worldwide, Inc. is a Delaware company with its principal place of business in

2

Virginia. It can be served by its registered agent Corporation Service Company, 2626 Glenwood Ave Ste. 550, Raleigh, NC 27608. Defendant Hampton Inns LLC is a is a Delaware company with its principal place of business in Virginia. It can be served by its registered agent Corporation Service Company, 2626 Glenwood Ave Ste. 550, Raleigh, NC 27608. These Defendants collectively will be referred to as "Hilton."

## FACTS

**The Hotel Industry's Role in Sex Trafficking**

11. What Defendants knew or should have known about the sex trafficking that was occurring in their jointly operated hotel, including the trafficking of L.M., is shaped by the widely known and pervasive relationship between the hotel industry and sex trafficking.

12. Defendants are aware of the important role that hotels play in the proliferation of sex trafficking and of the revenue they derive from sex trafficking, both directly and indirectly, from sex trafficking that occurs at their properties. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking

---

[1] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[2] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

3

place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

13.    To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

14.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

---

[3] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[4] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

[5] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

[6] *See Id.*

4

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

15. Recognizing the unique vantage point that that hotel owners and staff often have to identify potential human trafficking ventures and victims on their properties, several major hotel chains, including franchisors, franchisees, and owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking. In order to meet that responsibility, several (if not most) major hotel chains have adopted robust anti-human trafficking policies to train its employees to identify and properly respond to the "red flags" of sex trafficking. Each and every Defendant named herein had the opportunity and responsibility to adopt, implement, and enforce similar policies at the Hampton Inn. Unfortunately for L.M., such policies were not in place or were not enforced at the Hampton Inn.

**The Use of Hampton Inn Branded Properties for Sex Trafficking is Prevalent**

16. The use of Hampton Inn hotels for sex trafficking is well known to Defendant Hilton. Defendant Hilton has known for years that pimps and traffickers use their hotels to carry out their crimes. Scores of news stories dating back for over a decade highlight Defendants' knowledge of such conduct.[7] Defendant, Hilton, knew, or should have known, of the use of Hampton Inn branded hotels for sex trafficking ventures. Dating back to dates prior to the sex trafficking of Plaintiff and continuing thereafter, are notable complaints that put the Defendant, Hilton, on notice of the frequent use of Hampton Inn hotels including the subject Hampton Inn for commercial sex and other associated illegal activity.

17. These and other news stories show that the use of Hampton Inns for sex trafficking was not isolated to one Hampton Inn or geographic area and the common use of Hampton Inn for sex trafficking turned into a nationwide problem that stemmed from decisions at the top.

18. Each Defendant knew of the sex trafficking crisis prevalent in the hotel industry generally, as well as specifically at Hampton Inn branded hotels, including the subject hotel, and while Defendants claim not to tolerate such activity, the evidence shows and will show at trial that sex trafficking continued at the subject Hampton Inn frequently and long after the trafficking of the Plaintiff.

**L.M. Was Trafficked at the Hampton Inn**

19. One of the lives devalued and otherwise adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking was L.M.

---

[7] *See, e.g.*, Frederick Melo, *Burnsville / Sex ring sold high school 'party girls' on craigslist*, Twin Cities.com (July 12, 2007), https://www.twincities.com/2007/07/12/burnsville-sex-ring-sold-high-school-party-girls-on-craigslist/; Steve Hunter, *Man reportedly made at least $192,000 in 8 months from prostitutes in Kent*, Seattle, Kent Reporter (Sept. 7, 2011), https://www.kentreporter.com/news/man-reportedly-made-at-least-192000-in-8-months-from-prostitutes-in-kent-seattle/, Bryan Horwath, *8 arrests in prostitution sting: 4 Dickinson residents among those booked*, The Dickinson Press (Jan. 7, 2013), https://www.thedickinsonpress.com/news/8-arrests-in-prostitution-sting-4-dickinson-residents-among-those-booked.

6

20. From approximately December 2012 to April 2013, L.M. was repeatedly trafficked for sex at the Hampton Inn located at 1001 Wake Towne Dr, Raleigh, NC 27609.

21. L.M.'s trafficker knew the staff at the Hampton Inn by name and the staff called him by his pimp name, not his legal name.

22. The hotel rooms in which L.M. was trafficked were frequently paid for with cash.

23. There was also heavy foot traffic in and out of L.M.'s room involving men who were not hotel guests. These men had to pass the front desk to get to the room and were observed by the hotel staff. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time, which are signs of sex trafficking that hotel staff observed. And although the rooms were reserved for the night, they would leave after a few hours.

24. While L.M. was forced to have repeated visits from sex buyers, L.M.'s trafficker stayed in the outside hallway and parking lot, another sign of a sex trafficking venture occurring that the hotel staff observed.

25. Because policies purportedly enacted and enforced by Hilton to identify signs of sex trafficking and stop it from occurring were not properly implemented at the Hampton Inn by either Defendant Hilton or Defendant 42 Hotel, L.M.'s trafficker was able to continue the trafficking venture at the Hampton Inn. Had Defendant Hilton enforced the policies and procedures they enacted to prevent trafficking from occurring within their Hampton Inn branded hotels after observing an obvious sign of trafficking as described above, L.M.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Hampton Inn. Furthermore, had Defendant 42 Hotel properly followed the franchise policies enacted by Hilton to identify and prevent trafficking from occurring at Hampton Inn branded hotels as described

7

above, L.M.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Hampton Inn.

26. Despite obvious signs of human trafficking and indicators of commercial sex activity, Defendants failed to recognize, stop, or report the venture occurring on the premise that resulted in L.M.'s trafficking and consequently, actively facilitated the trafficking venture. The Defendants harbored or otherwise facilitated a sex trafficking venture on their hotel properties and accordingly, benefited, financial and otherwise, from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

27. Defendants continue to allow illegal activities to occur at the subject Hampton Inn, according to internet reviews that state there are people on drugs at the hotel.[8]

28. Defendants, acting by and through their agents, managers, vice-principals and employees, did not act to reduce or eliminate the human sex trafficking in the subject Hampton Inn, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

**Defendant, 42 Hotel, as Franchisee, Was Required to Report to the Franchisor, Hilton**

29. The relationship between 42 Hotel, as franchisee, and Hilton, as franchisor, was governed by a franchise agreement.

30. At all material times, Hilton had robust reporting requirements in place for its franchisees, such as 42 Hotel.

---

[8] https://www.booking.com/hotel/us/hampton-inn-raleigh-north.html;
https://www.google.com/travel/hotels/Hampton%20Inn%201001%20Wake%20Towne%20Dr,%20Raleigh,%20NC%2027609%20google/entity/CgsIksvc4aCn_92AARAB/details?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4926165,4926489,4931360,4934307,4936396,4937897,4940606,47061553&hl=enUS&gl=us&ssta=1&q=Hampton+Inn+1001+Wake+Towne+Dr,+Raleigh,+NC+27609+google&grf=EmQKLAgOE]gSJnIkKiIKBwjnDxADGAwSBwjnDxADGA0gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg5YWM1OGM0OTEwMjdhZmQ6MHg4MGJiZmQzYTBjMzcyNTky&rp=EJLL3OGgp__dgAEQksvc4aCn_92AATgCQABIAcABAg&ictx=1#dt-s12y

8

31.     Hilton requires its franchisees, such as 42 Hotel, to report all suspected instances of crime at Hampton Inn branded properties.

32.     Based on information observed by the staff at the subject Hampton Inn, reports should have been made to Defendant Hilton about the sex trafficking of L.M.

33.     Therefore, as a result of the strict reporting requirements, at all material times, each and every Defendant knew or should have known of their facilitation of sex trafficking at the Hampton Inn, including the facilitation of the sex trafficking of L.M.

34.     Defendant Hilton exercised pervasive and systematic control over Defendant, 42 Hotel.

35.     Defendant Hilton exercised an ongoing and systemic right of control over Defendant 42 Hotel regarding the operation of the subject Hampton Inn.

36.     At all relevant times, Defendant 42 Hotel was subject to and required to comply with franchise agreement standards, policies, and rules adopted by Defendant Hilton. These standards and policies are detailed and control the specific manner and means by which Defendant 42 Hotel must operate the subject Hampton Inn.

37.     Hilton requires its franchisees, such as 42 Hotel, to report all suspected instances of sex trafficking at Hampton Inn branded properties.

38.     Hilton required its franchisees, such as 42 Hotel, to allow Hilton to regularly inspect its Hampton Inn branded hotels. In fact, the standard franchise agreement for Hilton's Hampton Inn Branded Hotels states that it is the contractual duty of Hilton to "visit the hotel, evaluate [franchisee] compliance with this Agreement and the Rules and Regulations, and advise [franchisee] on changes necessary to bring the Hotel into System compliance."

39.     Hilton regularly inspected the Hampton Inn.

9

40.     One of Hilton's most valuable assets is its brand.

41.     Hilton required 42 Hotel to adhere to strict requirements, including but not limited to:

    a.  standardized training methods for employees at the Hampton Inn;

    b.  building and maintaining the Hampton Inn in a manner specified by Hilton;

    c.  standardized or strict rules of operation for the Hampton Inn;

    d.  regular inspection of the Hampton Inn and its operation by Defendant Hilton;

    e.  prices fixed by Defendant Hilton for the Hampton Inn;

    f.  Defendant Hilton provided an online booking platform for the Hampton Inn;

    g.  Defendant Hilton established reporting requirements for the Hampton Inn; and

    h.  other actions that deprived Defendant 42 Hotel of independence in the business operations of the Hampton Inn.

42.     Hilton specifically retained control over the day-to-day operation of Defendant 42 Hotel with regard to aspects of operation of the subject Hampton Inn that caused L.M.'s harm, including but not limited to reservation policies and procedures, staff training, security policies, and training, education polices, and procedure regarding human trafficking.

43.     Hilton regularly advised Defendant 42 Hotel on operational changes necessary for it to remain in compliance with Hilton's strict regulations.

44.     Hilton had the ability to impose fees or fines on 42 Hotel. Furthermore, at all material times, Hilton retained an absolute right to cancel its franchise agreement with Defendant 42 Hotel if Hilton's rules were violated or if 42 Hotel otherwise failed to comply with its contractual obligations.

45.     At all relevant times, Defendant 42 Hotel acted as the agent of Defendant Hilton when operating the subject Hampton Inn.

46.     Hilton and Defendant 42 Hotel shared control of the terms and conditions of the employment of staff at the subject Hampton Inn and, therefore, Defendant Hilton and Defendant 42 Hotel are joint employers. Upon information and belief, Defendant Hilton exercised control over the terms and conditions employment of staff at the subject Hampton Inn by advertising employment opportunities, making or influencing employment decisions, setting employee wages, and adopting standardized rules of operations that govern the day-to-day work of the employees.

**L.M.'s Trafficking Could Have Been Prevented at the Hampton Inn**

47.     At all material times, each and every Defendant owned, operated, managed, supervised, controlled, and/or was responsible for the operations of the Hampton Inn.

48.     Defendants acted jointly to rent rooms at the Hampton Inn, with Hilton retaining control over reservation systems and policies, training, and protocols as further described in this Complaint.

49.     Defendants were jointly responsible for customer safety and, specifically, prevention of human trafficking at the Hampton Inn. Defendant Hilton retained control over, and thus had a duty with respect to, customer safety at the Hampton Inn generally and specifically regarding detection of and response to human trafficking at the Hampton Inn.

50.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Hampton Inn hotels across the country, and the signs present at the subject Hampton Inn, each and every Defendant had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking and not to participate in or benefit from the facilitation thereof. Each and every Defendant failed to do so and thus facilitated sex trafficking that operated out of Hampton Inn.

11

51.     The most effective weapon against sexual exploitation and human trafficking is education and training.[9] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[10]

52.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[11] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

53.     If the Defendants had adequately trained and implemented guidelines, "red flags," training policies and procedures, and other recommendations adopted in the industry, each and every Defendant would have or should have known of L.M.'s trafficking at the Hampton Inn and would have been in a position to prevent the trafficking of L.M.

54.     The "red flags" and signs of a sex trafficking venture described above were observed by Defendant 42 Hotel. Upon information and belief, Defendant 42 Hotel should have reported the signs of sex trafficking to Defendant Hilton.

---

[9] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).
[10] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[11] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

55. Had each and every Defendant educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the Hampton Inn, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

56. Each and every Defendant's active decision not to prevent and stop sex trafficking and sexual exploitation at their hotels, including the Hampton Inn, makes them accountable to victims of sex trafficking, including the Plaintiff L.M.

57. There was an implicit agreement between Defendants and L.M.'s sex traffickers as evidenced by the circumstances surrounding the traffickers use of the facilities of the Hampton Inn, including but not limited to:

   a. Defendants continued rental of rooms to L.M.'s traffickers after they apparent warning signs that L.M. was being trafficked; and

   b. familiarity between L.M.'s traffickers and the staff at the Hampton Inn,

58. Thus, each and every Defendant engaged in acts and omissions that were supported, facilitated, harbored, and otherwise furthered the trafficker's sale and victimization of L.M. for commercial sexual exploitation. More specifically, the Defendants rented rooms to L.M's trafficker, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and took no action to abide by Hilton's own self-imposed anti-trafficking measures. This and related behavior by Defendants provide an ample basis to conclude that they participated in the venture that trafficked L.M.

59.     The motivation behind each and every Defendant's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; each and every Defendant ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Each Defendant Knowingly Benefitted from L.M.'s Sex Trafficking**

60.     Plaintiff alleges that each of the Defendants knowingly received benefits from participating in the venture that facilitated L.M.'s trafficking at the Hampton Inn.

61.     As a result of the strict reporting requirements at all material times, both Defendants knew they were both facilitating and benefitting from sex trafficking at the Hampton Inn including the sex trafficking of L.M.

62.     Hilton, as franchisor, generates substantial income from operations of hotels such as the Hampton Inn. In exchange for providing the services described above and more specifically delineated in the controlling franchise agreement, Hilton received a share of the profits from room rentals collected by Defendant 42 Hotel at the Hampton Inn. The primary source of Hilton's income is the franchising royalty fee, but Hilton also profits from reservation fees, marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents. The fees generated by Hilton are primarily based on gross room rentals; therefore, Hilton's profits increase with each room rental.

63.     Defendant 42 Hotel, as franchisee, profited from every stay by every patron at the Hampton Inn, both from room rentals and other hotel services.

14

64. Upon information and belief, Hilton knowingly benefitted from its participation in the sex trafficking venture carried on at the Hampton Inn in that it received a portion of the proceeds collected by its franchisee.

65. Therefore, at all material times, Defendant Hilton and Defendant 42 Hotel received monetary payment for the rental of rooms at the Hampton Inn, including the rooms where L.M. was being trafficked.

66. Despite knowledge of the sex trafficking venture occurring at Hampton Inn, both Defendant 42 Hotel and Defendant Hilton continued to financially benefit from L.M.'s stay at located at the Hampton Inn, all while doing nothing to prevent or stop criminal activity-sex trafficking, including the trafficking of L.M., from occurring on their property.

67. As a result of the monies paid by L.M.'s trafficker to the secure rooms for her trafficking at the Hampton Inn, Defendant Hilton and Defendant 42 Hotel knowingly benefitted from participating in the venture that trafficked, harbored, and maintained L.M.'s trafficking at the Hampton Inn.

## CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

68. L.M. incorporates all other allegations.

69. At all relevant times, L.M. was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

70. Defendants are liable as perpetrators within the meaning of 18 U.S.C. § 1595(a) because in the ways described above:

    a. Each Defendant knowingly or recklessly participated in harboring, maintenance, and/or other acts in further of sex trafficking, including the sex trafficking of L.M.; and

15

b. Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

71. Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as described above, each and every Defendant knowingly benefitted, by receiving financial and other compensation, for their participation in a venture they knew or should have known was engaged in sex trafficking, in violation of the TVPRA, 18 U.S.C. § 1591, *et seq*.

72. Despite knowledge of L.M.'s sex trafficking by the Defendants, L.M.'s trafficker was able to continue renting rooms for the sexual exploitation of L.M. at the Hampton Inn.

73. Each Defendant participated in a venture together and with, among others, L.M.'s traffickers. Defendants had an ongoing business relationship and association in fact with L.M.'s traffickers. Despite the fact that Defendants knew or should have known that L.M. was being sex trafficked in violation of the TVPRA, L.M.'s trafficker was able to continue renting rooms for the sexual exploitation of L.M. at the Hampton Inn. L.M.'s sex traffickers frequently used the subject Hampton Inn because they knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant profited while L.M. 's trafficker was able to rent a secure venue to earn profits by trafficking L.M. Each Defendant participated in the venture by continually renting rooms to L.M.'s trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of L.M.'s trafficking.

16

74. Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including L.M. at the Hampton Inn, enabled and contributed to the sex trafficking of L.M.

75. Each Defendant received substantial financial benefits as a result of these acts and/or omissions. Hilton received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the Hampton Inn. 42 Hotel received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the Hampton Inn.

76. The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

77. Each Defendant's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to L.M.

78. L.M. further alleges that, as a result of the relationship between Hilton and 42 Hotel, Hilton is vicariously liable for the acts of 42 Hotel, including at the Hampton Inn. Factors that support this allegation are that Hilton shared profits, standardized employee training, standardized and strict rules of operations, Hilton controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, Hilton had the right to terminate any franchisee, including 42 Hotel, that failed to comply with the requirements promulgated by Hilton. Thus, Hilton retained control, or the right to control, the mode and manner of work contracted for.

79. L.M. further alleges that Hilton is vicariously liable for the acts and omissions of the staff at the subject Hampton Inn because Hilton, together with 42 Hotel, acts as the joint

employer of these employees because Hilton and 42 Hotel jointly control the terms and conditions of their employment.

## DAMAGES

80. Hilton and 42 Hotel's acts and omissions, individually and collectively, caused L.M. to sustain legal damages.

81. Hilton and 42 Hotel are joint and severally liable for all past and future damages sustained by L.M.

82. L.M. is entitled to be compensated for personal injuries and economic damages, including:

     a. Actual damages;

     b. Direct damages;

     c. Incidental and consequential damages;

     d. Mental anguish and emotional distress damages (until trial and in the future);

     e. Lost earning capacity in the future;

     f. Loss of self-esteem and self-worth;

     g. Necessary medical expenses;

     h. Physical pain and suffering;

     i. Physical impairment;

     j. Emotional impairment;

     k. Unjust enrichment; and

     l. Penalties.

83. L.M. is entitled to exemplary damages.

84. L.M. is entitled to treble damages.

85.     L.M. is entitled to recover attorneys' fees and costs of court.

86.     L.M. is entitled to pre- and post-judgment interest at the maximum legal rates.

87.     A constructive trust should be imposed on Hilton and 42 Hotel, and the Court should sequester any benefits or money wrongfully received by Hilton or 42 Hotel for the benefit of L.M.

## DISCOVERY RULE

To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time Plaintiff was harmed, Plaintiff did not know that she was the victim of human trafficking, that her injury arose from being trafficked at Defendant(s) hotels or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, and certainly not more than ten years before suit was filed. Moreover, at the time the trafficking occurred, Plaintiff did not know what "human trafficking" was, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the existence of a cause of action until shortly before suit was filed, and certainly not more than ten years before suit was filed.

## JURY TRIAL

88.     L.M. demands a jury trial on all issues.

## RELIEF SOUGHT

89.     Wherefore, L.M. respectfully requests judgment against Hilton and 42 Hotel, jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

19

Respectfully submitted,

**PROVOST★UMPHREY LAW FIRM, L.L.P.**

/s/ Matthew C. Matheny
MATTHEW C. MATHENY
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Ph: 409-835-6000
Fax: 409-813-8652
mmatheny@pulf.com
TX State Bar No.  24039040
*Lead Counsel for Plaintiff*
*Notice of Special Appearance filed*

**ANNIE MCADAMS PC**

Annie McAdams
1150 Bissonnet
Houston Texas 77005
Ph: 713-785-6262
Fax: 888-713-0451 Facsimile
annie@mcadamspc.com
TX State Bar No. 2405104
*Lead Counsel for Plaintiff*
*Notice of Special Appearance to be filed*

**WILSON LAW, P.A.**

/s/ Kimberly Wilson White
KIMBERLY WILSON WHITE
434 Fayetteville St., Suite 2060
Raleigh, NC 27601
Ph:  919-890-0180
Fax:  919-890-8703
kim@wilsonlawpa.com
NC State Bar No.  30044
*Local Civil Rule 83.1(d) Counsel for Plaintiff*