IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-235-FL

| | |
|---|---|
| JANE DOE (L.M.), an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| 42 HOTEL RALEIGH, LLC d/b/a Hilton ) | |
| Hampton Inn and HILTON DOMESTIC ) | |
| OPERATING COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon to dismiss by defendant Hilton Domestic Operating Company, Inc. ("Hilton") (DE 53). The motion has been briefed fully and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff, an alleged victim of sex trafficking, commenced suit by filing complaint in this court April 28, 2023. Plaintiff has since amended her complaint on May 17, 2023, July 17, 2023, and June 12, 2024. The last amendment followed this court's grant of defendants' motions to dismiss by order dated February 13, 2024. See Doe (L.M.) v. 42 Hotel Raleigh, LLC, ___ F. Supp. 3d ___, 2024 WL 631482, at *8 (E.D.N.C. 2024). The court subsequently vacated the resulting judgment and permitted plaintiff to file one more amended complaint by order dated June 11, 2024.

In her operative complaint, plaintiff presents three claims: 1) perpetrator liability under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 (the "TVPRA"), against defendant 42 Hotel Raleigh, LLC ("42 Hotel"), defendant Hilton's franchisee; 2) beneficiary

liability against both defendants under the TVPRA; and 3) vicarious liability under the TVPRA against defendant Hilton only.  (See Compl. ¶¶ 139–151).[1]  Plaintiff seeks compensatory and punitive damages, the imposition of a constructive trust upon defendants to sequester any benefits they received from their alleged misconduct, and costs and fees.

In the instant motion, defendant Hilton seeks dismissal of all claims against it for failure to state a claim under Rule 12(b)(6).[2]  Defendant Hilton relies upon a franchise license agreement attached as an exhibit to its memorandum.  After briefing completed, plaintiff filed a notice of supplemental authority attaching an opinion and order of the United States District Court for the Southern District of Ohio on August 22, 2024.

## STATEMENT OF FACTS

The facts alleged in the third amended complaint are as follows.  Defendant 42 Hotel operates a Hampton Inn in Raleigh, North Carolina (the "hotel") as a franchisee of Hilton.  (See Compl. (DE 51) ¶¶ 14–15). Plaintiff is a natural person identified by the initials "L.M.," and a resident of North Carolina who was allegedly forced to engage in commercial sex acts for the benefit of a trafficker.  (Id. ¶¶ 12, 16).

Plaintiff met her trafficker in late 2012.  He manipulated and deceived her by starting an ostensibly romantic relationship with her for the purpose of luring her into trafficking.  (Id. ¶ 17). Without plaintiff's consent, the trafficker advertised plaintiff online for commercial sex, then picked plaintiff up, claimed they were going to dinner, and drove her to the hotel, at which he had arranged meetings with sex customers.  (Id. ¶ 18).  Plaintiff resisted, but the trafficker threatened her and forced her to perform such acts.  (Id.).  The trafficker set the prices for the commercial sex

---

[1]  Hereinafter, all references and citations to the "complaint" in this order are to the Third Amended Complaint at docket entry (DE) 51.

[2]  Defendant 42 Hotel answered July 10, 2024, and does not seek dismissal.

2

acts he forced plaintiff to perform, collected the money from the customers himself, and used financial dependence to coerce plaintiff into further sex acts. He also engaged in a "pattern of control and intimidating and threatening behavior" and otherwise continued to arrange commercial sex rendezvous. (Id. ¶¶ 19–20). Plaintiff escaped the trafficker's control only once he was arrested. (Id. ¶ 21).

Plaintiff alleges that Hilton exercised "systemic control" over 42 Hotel, including by issuing policies and procedures governing security, payment, training, and other circumstances. (Id. ¶¶ 24, 96). At the time of L.M.'s trafficking, Hilton allegedly knew that use of its properties for sex trafficking was a widespread problem, that 42 Hotel staff were not taking reasonable steps to deter or detect sex trafficking, that Hilton's own efforts were not effective, and that its policies and practices were facilitating sex trafficking. (Id. ¶ 51).

Plaintiff's trafficker developed an "implicit understanding" with 42 Hotel's staff and therefore "operated with little regard for concealment." (Id. ¶ 55). Accordingly, other victims were trafficked at the Hotel at the same time as L.M. (Id. ¶ 56). Plaintiff and the other victims exhibited the following "red flags" of trafficking: paying with cash or prepaid cards, having high volumes of men who were not registered guests enter and exit their rooms at unusual times, arriving with few possessions for extended stays, and having restricted movement. (Id. ¶ 58). 42 Hotel was aware of these problems through surveillance, internal investigations, customer complaints and feedback, and information from law enforcement. (Id. ¶ 60). Meanwhile, Hilton allegedly knew of these activities through 42 Hotel's obligation to report criminal activity, its regular monitoring of online reviews and customer complaints, its requirement that 42 Hotel submit regular reports to Hilton about operations, its monitoring of data about guests and their

3

activities, regular inspections, use of "field agents" to work with hotels on security issues, its access to surveillance systems, and information provided to Hilton by law enforcement. (Id. ¶ 66).

Specifically as to plaintiff, 42 Hotel's staff knew her trafficker's name and addressed him by his "pimp name," not his real name; the trafficker checked in while plaintiff stood to the side visible, not communicating with staff; plaintiff had no possessions with her when she arrived, and was forced to dress in provocative clothing; the trafficker brought other victims to 42 Hotel in addition to plaintiff, and paid in cash; there was heavy traffic into and out of plaintiff's room at unusual hours involving men who were not guests, who had to pass the front desk and were therefore observed by staff; the trafficker reserved rooms for a full night but often left after a few hours or in the middle of the night; the trafficker stood in the hallway and parking lot surveilling plaintiff as she engaged in commercial sex acts; and plaintiff's appearance, demeanor, movements, and interactions with others made trafficking obvious. (See id. ¶¶ 71–81).

Despite these signs, defendant 42 Hotel continued to rent rooms to traffickers, including the rooms used to exploit plaintiff. (Id. ¶ 90). It also developed relationships with the traffickers, continued to provide WiFi services to them when it knew they used these services to advertise their victims online, and failed to contact law enforcement. (Id. ¶ 92). During this period, Hilton maintained close supervision and direction over 42 Hotel's payment, security, reservation, staffing, data collection, and many other policies and practices, while failing to wield such control to prevent or remedy sex trafficking. (Id. ¶¶ 96, 100–01). 42 Hotel and Hilton benefited from all room rentals, including those provided to traffickers. (Id. ¶¶ 107–10).

Plaintiff alleges that 42 Hotel functioned as the legal agent of Hilton because Hilton exercised pervasive control over numerous facets of 42 Hotel's operations. (Id. ¶¶ 128–37).

**COURT'S DISCUSSION**

A.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.     Analysis

   1.     Beneficiary Liability

Defendant Hilton challenges its liability as a beneficiary under the TVPRA, disputing its participation in a venture, and its knowledge of any underlying trafficking.

      a.     Ventures

Plaintiff pleads the existence of two ventures: 1) a venture between defendants and plaintiff's street-level trafficker ("Venture 1"); and 2) a commercial venture between only defendants ("Venture 2"). Hilton argues that it did not participate in either venture, and/or that neither venture can create liability.

---

[3]     Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

i.  Venture 1

Hilton argues against Venture 1 on grounds that financially benefitting from sex trafficking in itself, and financially benefitting from participation in a venture under the TVPRA, are not the same, and that plaintiff pleads only the former. The court disagrees.

The court incorporates by reference its discussion of the lack of controlling authority on the issues presented by this case from its February 13, 2024, order. See Doe (L.M.), ___ F. Supp. 3d ___, 2024 WL 631482, at *2–3. It suffices here to restate that beneficiary liability under 18 U.S.C. § 1595 has four elements: that the defendant 1) knowingly benefitted; 2) from taking part in a venture; 3) which violated § 1591 as to the plaintiff; and 4) that the defendant had actual or constructive knowledge that the venture violated § 1591 as to the plaintiff. See G.G. v. Salesforce.com, Inc., 76 F.4th 544, 553 (7th Cir. 2023) (holding third and fourth elements to not be victim-specific); Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021) (holding the opposite as to the third and fourth elements).

Hilton bases its position in Doe #1, which defines "participation in a venture" to mean "[taking] part in a common undertaking or enterprise involving risk and potential profit." Doe #1, 21 F.4th at 725. Hilton accordingly asserts, on the basis of this discussion, that it merely observed sex trafficking, insufficient to establish liability, which requires the commission of an overt act, with criminal intent, in aid of the underlying criminal violation. (Hilton Br. 18–19). The court agrees with the unremarkable quote from Doe #1 given above. But nothing in Doe #1 mandated, as Hilton argues, that it must have held a criminal purpose and have committed an overt act in furtherance of the venture. Indeed, that case merely held that entirely passive observation of sex trafficking did not establish liability, Doe #1, 21 F.4th at 727, but plaintiff sufficiently pleads that Hilton facilitated trafficking, not that Hilton just quietly observed it. (See Compl. ¶ 101). Nor

6

does the statutory text support this view; it makes no mention of any overt act requirement, and it imposes a negligence standard, not a criminal mens rea. See 18 U.S.C. § 1595(a). Instead, the court agrees with the analysis of G.G., which held that participation requires nothing more than facilitation of a venture which violated § 1591, and not "direct participation" in sex trafficking. See G.G., 76 F.4th at 559.

Hilton also rests upon K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), an unpublished, unargued Eleventh Circuit opinion. As noted in the court's prior orders in this case, the Fourth Circuit has not addressed beneficiary liability under the TVPRA, and so the court gives significant persuasive value to appellate decisions from other federal courts of appeal. However, an opinion with these characteristics carries less value, and the court is compelled to agree instead, as more properly based upon the statutory text, with the greater weight of authority which has rejected the atextual injection of overt act and criminal mens rea requirements into § 1595.[4] See, e.g., G.G., 76 F.4th at 559 n.15 (rejecting imposition of overt act requirement); Acevedo v. eXp Realty, LLC, ___ F. Supp. 3d ___, 2024 WL 650189, at *23 (C.D. Cal. 2024) (same); A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020) (same); Doe (S.A.S.) v. ESA P Portfolio LLC, No. 3:23-cv-6038, at *7 (W.D. Wash. July 2, 2024) (same); E.S. v. Best Western Int'l, Inc., 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021) (same for criminal purpose); Cassone v. Austin Chronicle Corp., No. 1:23-cv-1197, 2024 WL 2031713, at *9 (W.D. Tex. May 7, 2024) (same).[5]

Defendant Hilton's position, essentially, is that a sex trafficking venture under § 1595 is synonymous with a criminal conspiracy to commit sex trafficking under § 1591. The court instead

---

[4]    In addition, K.H.'s reasoning is largely quotation from Doe #1, which the court has already addressed.

[5]    Some of these cases cite or quote a 2019 Southern District of Ohio case, the reasoning of which Hilton attacks in depth. The court will address these arguments separately below.

concludes, as discussed throughout this order and as moored in the statute's text, that the "participation in a venture" element is met if at least one participant therein commits a criminal violation, and the other participants at least negligently facilitate the venture's activities. See 18 U.S.C. § 1595(a); G.G., 76 F.4th at 558–60. "It is the venture that must violate [§] 1591, not the participant." G.G., 76 F.4th at 559.

The court therefore rejects defendant Hilton's argument that plaintiff fails to adequately plead Venture 1, or Hilton's participation therein.

      ii.  Venture 2

As noted, plaintiff pleads Venture 2 as a "commercial venture" solely between the two named defendants here. Defendant Hilton challenges this theory of venture on two grounds: 1) at least one actor in a TVPRA venture must have violated one of the criminal statutes for which the TVPRA provides a civil remedy, but plaintiff fails to plead that either defendant here violated any such statute; and 2) primarily by analogy to RICO authority, that a corporate entity cannot conspire or form a venture with its own affiliates or agents.

First, the parties dispute whether a civil TVPRA venture must include at least one party which criminally violated a statute for which the TVPRA provides civil recourse, primarily by advancing differing interpretations of G.G. Hilton is correct on this threshold point. G.G. makes clear that the venture must have violated 18 U.S.C. § 1591, and indeed one of the entities in the pleaded business-to-business commercial venture there had itself "committed multiple violations" of § 1591. G.G., 76 F.4th at 552–54.

Plaintiff resists this conclusion by relying upon Doe #1 and C.T. v. Red Roof Inns, Inc., No. 2:22-cv-834, 2023 WL 3510879 (M.D. Fla. Mar. 11, 2023). However, Doe #1 is inapposite here because the plaintiff in that case pleaded her venture theories idiosyncratically: she argued a

sex trafficking venture with the street-level traffickers before the district court, then she attempted to swivel to a venture between just the hotel and franchisor, as here, only before the Eleventh Circuit. See Doe #1, 21 F.4th at 727. The Eleventh Circuit refused to permit this pivot on basic issue-preservation grounds, and so did not actually rule on the merits of a venture theory that did not involve street-level traffickers. See id. C.T. supports plaintiff's point, but G.G.'s approach is more closely tied to the statutory text, which unambiguously requires the pertinent venture to have violated at least one of the underlying criminal statutes. See 18 U.S.C. § 1595(a). Plaintiff also argues that this interpretation subsumes § 1595's negligence standard within the criminal mens rea requirement of § 1591, thereby improperly raising the pleading standard for the former in the manner the court rejected above. (Pl. Br. 13). The court disagrees. Not every participant in a venture must have committed a criminal violation; instead, the venture itself must have violated § 1591, meaning at least one party thereto must have done so. This conclusion does not require a TVPRA plaintiff to effectively prosecute each and every venture participant to conviction under § 1591. See G.G., 76 F.4th at 559.

Plaintiff defines Venture 2 here to include only Hilton and 42 Hotel, not her street-level traffickers. (See Compl. ¶ 121 ("commercial venture with one another")). The survival of plaintiff's Venture 2 theory thus depends on whether 42 Hotel and/or Hilton violated § 1591. Plaintiff does not plead that Hilton itself violated § 1591, instead lodging a perpetrator claim only against 42 Hotel. (See Compl. ¶ 140). The court must therefore examine whether plaintiff adequately pleads a criminal violation of § 1591 by 42 Hotel.[6]

---

[6] The court notes that defendant 42 Hotel did not move to dismiss the complaint, and emphasizes both that the following discussion applies the Rule 12(b)(6) standard, and that nothing in this order should be construed to limit the arguments 42 Hotel may make at summary judgment or in other dispositive postures.

Plaintiff pleads that 42 Hotel committed criminal violations of both § 1591(a)(1) and (2). (Compl. ¶ 140). The court agrees with Hilton that 42 Hotel cannot be criminally liable under §1591(a)(1). That subsection criminalizes anybody who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means," a person knowing or with reckless disregard that force or fraud will be used to cause that person to engage in commercial sex. 18 U.S.C. § 1591(a)(1). The only verb in the section that could apply to 42 Hotel, as opposed to the street-level traffickers, is "harbors." But the Fourth Circuit has made clear that this verb, in the criminal context, does not mean simply "to house." See Reyes v. Waples Mobile Home Park Limited P'Ship, 91 F.4th 270, 278 (4th Cir. 2024).[7] The court therefore rejects the proposition that defendant 42 Hotel could be liable for "harboring" under § 1591(a)(1); so, because only that verb could conceivably embrace 42 Hotel's conduct, it could not be liable under § 1591(a)(1).

However, 42 Hotel could be liable under § 1591(a)(2), which penalizes "benefit[ting]" from participation in a venture which engaged in an act described in § 1591(a)(1). Plaintiff pleads that 42 Hotel had actual knowledge of widespread and ongoing sex trafficking at the hotel and actively facilitated such activity, while knowingly renting rooms to traffickers and receiving revenue therefrom. (See Compl. ¶¶ 89–95, 107–120). These allegations suffice to plead a violation of § 1591(a)(2) based upon benefitting from participation in a venture. See Ricchio v. McLean, 853 F.3d 553, 556–57 (1st Cir. 2017) (Souter, J.); J.M. v. Choice Hotels Int'l, Inc., No. 2:22-cv-672, 2023 WL 3456619, at *2–3 (E.D. Cal. May 15, 2023); United States v. Bhimani, Crim. No. 3:17-324, 2021 WL 5179196, at *9–10 (M.D. Pa. Nov. 8, 2021). The court therefore

---

[7] But see Harboring, Black's Law Dictionary (12th ed. 2024) ("affording lodging . . . to a person, esp. a criminal").

concludes that plaintiff adequately pleads that defendant 42 Hotel violated 18 U.S.C. § 1591, and hence that Venture 2 did so as well. See G.G., 76 F.4th at 559–60.

Next, Hilton argues that the TVPRA should be interpreted in harmony with the RICO statute. Under RICO, a corporation cannot form an enterprise with its own agents or employees, and so Hilton cannot have formed a venture with 42 Hotel, which the court concludes below was indeed Hilton's agent, at least at the Rule 12 stage.[8]

Hilton is correct that a corporation cannot form an enterprise with its own agents or employees. See, e.g., U1it4less, Inc. v. Fedex Corp., 871 F.3d 199, 205–06 (2d Cir. 2017) ("a corporate person cannot violate [RICO] by corrupting itself"); Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1356 (11th Cir. 2016); Semiconductor Energy Lab'y Co., Ltd. v. Samsung Elecs. Co., Ltd., 4 F. Supp. 2d 473, 477 (E.D. Va. 1998). However, the court agrees with plaintiff that Congress elected to write RICO and the TVPRA differently, so as to diminish significantly the force of RICO authority as applied to the TVPRA. As many courts have recognized, the two statutes define participation in the venture or enterprise very differently: RICO requires participation in an enterprise through a pattern of criminal racketeering activity, while the TVPRA permits liability for those who merely benefit from the criminal activity of others. Compare 18 U.S.C. § 1962(c), with 18 U.S.C. § 1591(a)(2), and 18 U.S.C. § 1595(a). RICO authority therefore has little utility here. See G.G., 76 F.4th at 559 n.15 (collecting cases).

In sum, the court concludes that Venture 2 is adequately pleaded, except insofar as it rests upon a criminal violation of 18 U.S.C. § 1591(a)(1) by defendant 42 Hotel.

---

[8] Throughout this order, the word "venture" draws its meaning from the TVPRA and authority interpreting it, while the word "enterprise" does the same from RICO and its authority.

b.  Knowledge

Last, defendant Hilton challenges plaintiff's allegations of its constructive knowledge of sex trafficking. The complaint adequately pleads such knowledge, and so this argument does not succeed.

As noted in the court's prior orders and above, § 1595 creates a "constructive knowledge" or "negligence" standard. E.g., Doe (L.M.), ___ F. Supp. 3d at ___, 2024 WL 631482, at *5. As amended, the complaint makes sufficient, non-conclusory allegations supporting Hilton's constructive knowledge. For example, in addition to detailed allegations of Hilton's close control over the hotel as discussed below, plaintiff alleges that Hilton negligently failed to train or supervise its employees to detect sex trafficking, relied upon ineffective anti-trafficking policies even once they were shown to have led to trafficking, used its power over its franchisee to create a minimally risky venue for traffickers, permitted traffickers to reserve rooms in cash without identification, and superintended the traffickers' internet usage which showed evidence of trafficking activities. (Compl. ¶¶ 66, 101).[9] These allegations make out constructive knowledge sufficiently to survive a Rule 12 motion. See, e.g., Doe v. Hotels, 6:23-cv-1012, 2024 WL 2955728, at *9 (M.D. Fla. June 12, 2024).

Additionally and in the alternative, because the court concludes below that plaintiff adequately pleads an agency relationship between defendants 42 Hotel and Hilton, the former's knowledge is imputed by operation of that relationship to the latter. See Restatement (Third) of Agency, §§ 5.01, 5.03. And the complaint certainly pleads that 42 Hotel had at least constructive knowledge. (Compl. ¶¶ 55–81). This imputation principle provides an alternative, independent

---

[9] These allegations supplement what the court deemed inadequate in plaintiff's prior complaint; namely, the operative complaint adds allegations on, for example, Hilton's monitoring of customer reviews and feedback, collection of data on reservations and WiFi usage, access to surveillance systems, deployment of "field agents" to franchisee hotels to address security issues, and receipt of information from law enforcement. (See Compl. ¶ 66).

12

basis on which to conclude that the complaint adequately pleads Hilton's constructive knowledge as required.

c. M.A.

Defendant Hilton engages in a close parsing of M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 968 (S.D. Ohio 2019), one of the first and most heavily relied upon cases interpreting the TVPRA in the hotel context.[10] Defendant Hilton critiques portions of M.A.'s reasoning to support its arguments on the participation and knowledge elements. (Hilton Br. 23–27).

The court agrees with some of Hilton's points. First, the statutory phrase "participation in a venture" should be defined, and the court accepts the Doe #1 court's definition of "venture" and the G.G. court's definition of "participate." Doe #1, 21 F.4th at 725; G.G., 76 F.4th at 559–60; (Hilton Br. 23). But doing so makes no difference to the court's conclusions through this order. Second, the court agrees that in most cases, analysis of the "participation in a venture" element should precede discussion of the mens rea element as a matter of logic. (Hilton Br. 24).

But the court must reject other portions of Hilton's critique of M.A. and the cases that have relied upon it, at least as Hilton attempts to apply these criticisms to the complaint here. Hilton argues that M.A. improperly failed to require the pleading of an overt act or criminal intent as part of participation in a venture. (Hilton Br. 24–25). But the imposition of a criminal intent requirement into the participation element, thereby effectively transforming § 1595 into a criminal conspiracy statute with negligible distinction from § 1591, as discussed above flouts the statutory text, which clearly contemplates liability under a negligence standard, and which separately sets out liability for beneficiaries of sex trafficking and for perpetrators of that crime. 18 U.S.C. §

---

10 As of the date of this order and according to Westlaw, M.A. has been cited by 146 judicial opinions, including G.G. and one of this court's prior orders in this case.

13

1595(a). The court agrees with the many courts to have held that a party can "participate" in a venture by negligently facilitating the venture's activities even without criminal intent. See G.G., 76 F.4th at 559; Acevedo, ___ F. Supp. 3d ___, at *23; Cassone, 2024 WL 2031713, at *9; J.M., 2023 WL 3456619, at *4; J.C. v. Choice Hotels Int'l, Inc., No. 20-cv-155, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020).

Hilton also critiques M.A.'s treatment of the knowledge element, contending that that court did not properly assess the allegations of knowledge presented in the complaint there. (Hilton Br. 26–27). The court has already concluded that plaintiff adequately alleges Hilton's constructive knowledge, so this line of argument is beside the point.

In sum, the court concludes that 1) § 1595 does not require each participant in a venture to act with criminal intent or to commit an overt act in furtherance of a § 1591 violation; 2) at least one member of a venture, but not all, must have committed a violation of § 1591; and 3) under these principles, plaintiff has adequately pleaded her beneficiary liability claim against Hilton.

2.   Vicarious Liability

The court now turns to plaintiff's second claim, for vicarious liability. Defendant Hilton argues that it cannot be held vicariously liable for defendant 42 Hotel's actions because no agency relationship between them existed, for three reasons: 1) plaintiff's allegations supporting agency are conclusory; 2) the franchise agreement in question disclaims an intent to create such relationship; and 3) even if agency existed, 42 Hotel's conduct was outside its authority, defeating vicarious liability for Hilton as a principal. (See Hilton Br. (DE 54) 12–17). The court disagrees with these points and concludes that plaintiff adequately pleads an agency relationship sufficient to shepherd her vicarious liability claim at least through a Rule 12 motion.

14

Before proceeding to these arguments, the court addresses at the outset choice of law. Hilton argues North Carolina law should govern the existence of an agency relationship, while plaintiff advocates for federal common law. (Hilton Br. 12–17; Pl Br. (DE 56) 18–19; Reply Br. (DE 57) 6).

The court concludes that federal common law is applicable. Courts evaluating federal statutory claims, including under the TVPRA, generally draw upon the federal common law of agency. See Krakauer v. Dish Network, LLC, 925 F.3d 643, 659 (4th Cir. 2019) ("we may . . . assume that federal statutes are written with familiar common law agency principles in mind"); A.D. v. Wyndham Hotels & Resorts, Inc., No. 4:19cv120, 2020 WL 9550005, at *3 (E.D. Va. Sept. 21, 2020) (applying federal common law of agency to TVPRA claim); Doe v. Wyndham Hotels & Resorts, No. 8:23-cv-1554, 2023 WL 8888836, at *6 (C.D. Cal. Nov. 13, 2023) (same). Further, the Fourth Circuit has instructed that courts must evaluate the content of federal common law on agency by consulting the "general common law of agency and not the law of a particular state." Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 259–60 (4th Cir. 1997) (emphasis in original); see Hodgin v. UTC Fire & Sec. Ams. Corp., Inc., 885 F.3d 243, 252 (4th Cir. 2018). Such content is derived from the Restatement of Agency. Cilecek, 115 F.3d at 259–60; Hodgin, 885 F.3d at 252.

The court acknowledges Hilton's cases that applied the substantive agency law of the forum state. But these cases either applied different circuit precedent, or the parties did not raise choice of law. See K.O. v. G6 Hosp., LLC, ___ F. Supp. 3d ___, 2024 WL 1396269, at *12 (E.D. Mich. 2024) (applying Michigan agency law because Sixth Circuit precedent did not foreclose this path and because analysis was the same under either possible approach); Doe (K.B.) v. G6 Hosp., LLC, No. 1:23-cv-2597, 2023 WL 8650785, at *7 (N.D. Ga. Dec. 14, 2023) (applying Georgia

15

law for similar reasons); S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (applying New York agency law because parties had not raised issue). The court will therefore evaluate these issues under federal common law as drawn from the Restatement of Agency.

          a.      Sufficiency of Allegations

Defendant Hilton's first-line position is that plaintiff fails to adequately plead the existence of an agency relationship between the defendants, because her allegations are conclusory and do not establish such relationship. The court disagrees.

Hilton is correct that a franchising relationship does not automatically produce agency. See Restatement of Agency (Third) § 1.02 cmt. a (2024). But franchising can create agency when its traditional factors are present. Id. The "defining element" of agency is the principal's power to control the agent's actions. G.M. v. Choice Hotels Int'l, Inc., ___ F. Supp. 3d ___, 2024 WL 1256051, at *12 (S.D. Ohio 2024) (applying and quoting Restatement (Third) of Agency); Restatement (Third) of Agency § 1.01 cmt. f(1).

Plaintiff's allegations give rise to a plausible inference of agency control under the Restatement. Plaintiff exhaustively catalogues defendant Hilton's various powers over defendant 42 Hotel, including that Hilton:

    1)    controlled all details of the reservation, check-in, and payment processes;

    2)    directly made reservations and accepted payment through a central system that it controlled;

    3)    controlled disposition of guest requests to extend reservations;

    4)    controlled accepted payment methods;

    5)    controlled and operated guest ID verification policies;

6) controlled room rates, discounts, fees, and rewards programs;

7) restricted the ability of hotel staff to refuse or cancel a reservation;

8) established "operational directives" on information hotel staff had to collect and what staff could not ask at check-in;

9) required franchisees to use Hilton's property management system for "virtually all aspects of hotel operations";

10) controlled adoption, monitoring, and enforcement of policies related to reporting or suspected crime on franchisee premises;

11) audited and inspected franchisees compliance with security policies;

12) controlled the specific WiFi tools and systems 42 Hotel had to use on its premises;

13) controlled housekeeping scheduling;

14) controlled staff training and hiring;

15) controlled vendor selection;

16) required 42 Hotel to use Hilton's email systems;

17) dictated 42 Hotel's required insurance; and

18) possessed the right to inspect 42 Hotel including through unannounced inspections and audits.

(Compl. ¶¶ 96, 100, 132).[11]

In Rule 12 posture, where inferences from all such allegations must be drawn in plaintiff's favor, these allegations more than suffice to establish an agency relationship. See, e.g., G.M., ___ F. Supp. 3d at ___, 2024 WL 1256051, at *12; J.L. v. Best Western Int'l, Inc., 521 F. Supp. 3d

---

[11] Plaintiff's allegations supporting Hilton's control are extremely lengthy, and the court selects these items on an illustrative, not exhaustive basis.

1048, 1064–65 (D. Colo. 2021) (finding much less extensive allegations sufficient under TVPRA and federal common law); A.D., 2020 WL 9550005, at *4 (same).[12]

Further, the cases defendant Hilton cites are distinguishable. The court has already discussed several which applied the substantive law of other states. Others also include this vital distinction, and/or involved truly conclusory allegations. See L.H. v. Marriott Int'l, Inc., 604 F. Supp. 3d 1346, 1361–62 (S.D. Fla. 2022) (rejecting agency under Florida law based on skeletal allegations that franchisors "own[ed], supervise[ed], or operate[ed]" the hotels); H.G. v. Inter-Continental Hotels Corp., 489 F. Supp. 3d 697, 708–09 (E.D. Mich. 2020) (similar under Michigan law).

In addition, plaintiff's joint employer theory survives as well. Because agency and joint employer status are virtually identical under federal common law, except that the latter requires allegations specific to control of employees rather than to operations generally, plaintiff's allegations catalogued above adequately plead a joint employer theory of vicarious liability. See A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921, 942 (D. Or. 2020); A.W. v. Red Roof Inns, Inc., No. 2:21-cv-04934, 2022 WL 17741050, at *10 (S.D. Ohio Dec. 16, 2022).[13]

The court rejects defendant Hilton's arguments that plaintiff's allegations of control are too conclusory to plead an agency or joint employer relationship in this posture.

---

[12] These allegations would suffice under North Carolina law as well. See Wood v. McDonald's Corp., 166 N.C. App. 48, 58–59 (2004) (finding much sparser allegations supporting agency in franchise context sufficient to survive summary judgment).

[13] A.W. applied Ohio law, but only after stating that Ohio and federal common law were identical on the pertinent issues. See A.W., 2022 WL 17741050, at *10.

18

b.  Franchise Agreement

Defendant Hilton also argues that the franchise agreement, which it offers as an exhibit, precludes any agency relationship because it expressly disclaims the creation of any such relationship.  (See Hilton Br. 16–17; id. Ex. A (DE 54–1) § 15.a).

The parties dispute at length whether the court may consider this document in this posture, but this determination is unnecessary because even if considered, the agreement does not sever any possible agency relationship as Hilton contends.  The label parties attach to a commercial or other relationship does not control the legal existence of an agency relationship.  Restatement (Third) of Agency § 1.02(a); see, e.g., Krakauer, 925 F.3d at 660; Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 147 (1st Cir. 2013) (quoting Restatement (Third) of Agency); Atrium of Princeton, LLC v. NLRB, 684 F.3d 1310, 1315 (D.C. Cir. 2012) (similar).

"[P]arties cannot by ukase negate agency if the relation the contract creates is substantively one of agency."  United States v. Dish Network LLC, 954 F.3d 970, 975 (7th Cir. 2020) (emphasis in original) (citing Restatement (Third) of Agency).  The court therefore rejects this argument as well.

c.  Scope of Authority

In the alternative, Hilton argues against imputation of liability on grounds that any misconduct by 42 Hotel was outside the scope of its authority as Hilton's agent.  The court disagrees.

The United States District Court for the Eastern District of Virginia, in A.D., WL 9550005, addressed a similar contention by a hotel franchisor.  That court, applying federal common law and the common law of torts, held that while an intentional tort is less likely to be within the scope

of an agent's authority for the purposes of liability than a negligent tort, such imputation is a fact-bound inquiry ill-suited to resolution at the pleadings stage, and that allegations of negligence regarding room renting and trafficking by the agent are sufficient in this context. See A.D., 2020 WL 9550005, at *5.[14] Plaintiff makes exactly these allegations here, asserting that defendants were negligent in their security, reservation, and other policies and practices, which track with the statute's language permitting liability under a negligence standard of constructive knowledge. (See Compl. ¶¶ 60, 92, 101, 111, 113). Plaintiff pleads enough for this issue not to defeat her vicarious liability claim at the Rule 12 stage, and Hilton's contrary argument is rejected.

## CONCLUSION

For the foregoing reasons, defendant Hilton's motion to dismiss (DE 53) is DENIED. The clerk is DIRECTED to file the court's initial order on planning and scheduling upon entry of this order.

SO ORDERED, this the 16th day of September, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[14] A.D. held, in addition and in the alternative, that the plaintiff there had also stated a claim because principals may sometimes be held liable for agent conduct undisputedly outside the scope of the agent's authority. See A.D., 2020 WL 9550005, at *5–8. The court need not address this alternative ground because it concludes that plaintiff adequately pleads negligence by the agent.