**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| Jane Doe (L.M.) | |
| Plaintiff, | Case No. 5:23-cv-00235-FL |
| v. | |
| 42 Hotel Raleigh, LLC d/b/a Hilton Hampton Inn and Hilton Domestic Operating Company Inc., | |
| Defendants. | |

**<u>DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.'S</u>**
**<u>MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ......................................................................................................................... 3

I.      PLAINTIFF'S CLAIMS ARE TIME-BARRED............................................................. 3

        A.      Plaintiff's claims arose more than ten years before this action was filed.............. 3

        B.      No exception salvages Plaintiff's untimely claims. ............................................... 5

II.     PLAINTIFF'S "PARTICIPANT" CLAIMS FAIL ON THE MERITS. ........................... 8

        A.      Hilton did not participate in a venture that trafficked plaintiff.............................. 9

        B.      Hilton did not knowingly benefit from participating in a venture that
                trafficked Plaintiff. .............................................................................................. 15

        C.      Hilton did not have actual or constructive knowledge of Plaintiff's
                trafficking............................................................................................................. 16

III.    PLAINTIFF'S "VICARIOUS LIABILITY" CLAIMS ALSO FAIL ON THE
        MERITS. ..................................................................................................................... 19

CONCLUSION..................................................................................................................... 21

Defendant Hilton Domestic Operating Company Inc. ("Hilton") hereby moves for summary judgment because discovery has roundly refuted Plaintiff's claims, representations, and testimony. Hilton also reserves the right to seek further relief from the Court.

## Introduction

Plaintiff alleges that she was criminally trafficked at a Hampton Inn (the "Raleigh Hampton Inn") owned and operated by a Hilton franchisee, 42 Hotel Raleigh, LLC ("42 Hotel"). Plaintiff's claims primarily rest on the theory that Hilton and 42 Hotel had a **"continuous business relationship" with her alleged trafficker** by **"continuing to rent rooms to [him]"** after "they knew or should have known that hotel rooms were being used for unlawful trafficking."** Third Am. Compl. ¶¶ 110–113 (Dkt. No. 51) (emphasis added); *see L.M. v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, at *4–5 (E.D.N.C. Sept. 16, 2024) (*L.M. II*) (finding that these allegations plausibly satisfied the TVPRA's "participation in a venture" requirement under §§ 1595(a) and 1591(a)(2)). These claims also depend on the notion that **these room rentals continued "through April 2013."** Pl.'s Br. Opp'n to 42 Hotel's Mot. Dismiss 23 (Dkt. No. 31) (emphasis added); *L.M. v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 467 n.4 (E.D.N.C. 2024) (*L.M. I*) (acknowledging the TVPRA's ten-year statute barred claims before that time).

But these claims are false. The room rentals **never even took place**. And even if they did, the supposed trafficking **ended in February 2013**. This is now the second case to go through discovery where Plaintiff's counsel has "not been able to sustain these allegations with evidence." *S.A.S. v. Hilton Domestic Op. Co.*, __ F. Supp. 3d __, 2025 WL 2306579, at *11 (W.D. Wash. 2025) (granting summary judgment after denying motion to dismiss in a case where discovery revealed "no [] reservation records" to the trafficker and an "inconsistent" "timeline"). Plaintiff's counsel's continued misrepresentations have caused Hilton to expend significant resources litigating claims that have proven to have no factual basis.

As for the room rentals, Hilton's conduct was actionable only to the extent it rented rooms to Plaintiff's alleged trafficker on a continuous basis. But there are *no records* associated with Plaintiff's alleged trafficker at the hotel. FED. R. EVID. 803(7) (noting the "absence" of business records "prove[s]" that they "did not occur"). Moreover, even crediting Plaintiff's contradicted testimony—i.e., that she stayed at the hotel for a couple hours about six times over four months— it does not reflect a "common undertaking or enterprise involving risk and potential profit" between the hotel and trafficker. Pl. L.M. Dep. Tr. ("L.M. Dep.") at 59:2–9, Aug. 27, 2025 (Exhibit D); *L.M. II*, 2024 WL 4204906, at *3; *see S.A.S.*, 2025 WL 2306579, at *12 (even crediting the plaintiff's contradicted claims, "a total of 30 to 60 non-consecutive days between 2002 and 2016 is simply not enough . . . to find a *continuous* business relationship"); *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1251 (N.D. Ga. 2024) ("a total of only eleven nights in three different months at a property that has numerous rooms for rent 365 nights a year" does not "indicate a special relationship or common venture"). And Plaintiff's back-up theory that Hilton participated in a venture with 42 Hotel fails because neither entity "committed a violation of § 1591" against her. *L.M. II*, 2024 WL 4204906, at *7. Plaintiff's case is meritless.

As for the trafficking period, Hilton's "conduct remained actionable" only to the extent the conduct "took place April 28, 29, or 30, 2013." *L.M. I*, 717 F. Supp. 3d at 467 n.4 (noting the complaint was filed on April 28, 2023). But Plaintiff testified unequivocally that her trafficking at the Raleigh Hampton Inn ended in February 2013, and she never had any contact with her trafficker after they were both arrested on April 7, 2013. L.M. Dep. at 43:16–24, 17:5–17 (Exhibit D). Plaintiff's case is thus also plainly time-barred.

The other elements of a TVPRA claim are not satisfied either. There is no evidence that the hotel (much less Hilton) knowingly benefitted from their supposed participation in a venture.

There is no evidence that the hotel (much less Hilton) knew or should have known about Plaintiff's trafficking—she was not physically abused, did not speak to staff or ask for help, and left her room tidy. To top it off, even if 42 Hotel is somehow liable, that is not attributable to Hilton, which did not have an agency relationship with the franchisee. In short, summary judgment must enter.

## Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But where the evidence "is so one-sided that one party must prevail as a matter of law," summary judgment is appropriate. *Id.* at 252. Any "inferences" that can be drawn from the evidence "must still be within the range of reasonable probability … and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020).

## Argument

### I. Plaintiff's claims are time-barred.

#### A. Plaintiff's claims arose more than ten years before this action was filed.

The TVPRA provides that "[n]o action may be maintained under [18 U.S.C. § 1595(a)] unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). As this Court has acknowledged, any claim alleging a trafficking violation is thus "untimely insofar as it rests on any conduct occurring" ten years "before" a plaintiff "filed her complaint." *L.M. I*, 717 F. Supp. 3d at 467 n.4; *see also, e.g.*, *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 638 (E.D. Mich. 2024) (holding that a TVPRA plaintiff "may only pursue claims for violations of the TVPRA that occurred in the ten years prior to the filing of her complaint"); *Tyla*

*D. v. MGM Resorts Int'l*, 2024 WL 4839744, at \*2 (D. Nev. Nov. 19, 2024) (dismissing because plaintiff's "trafficking thus ended no later than March 2014" but she "filed her complaint on April 10, 2024"); *K.A. v. 26th St. Hosp., LLP*, 2024 WL 2112480, at \*8 (D.N.D. Apr. 15, 2024) (concluding "that the portions of the Plaintiffs [sic] claims resting on sex trafficking prior to May 12, 2013 (ten years prior to the filing of her complaint) would be time-barred").

Here, Plaintiff's counsel repeatedly pleaded and represented that "L.M. was being actively trafficked at 42 Hotel's property through April 2013." Pl.'s Br. Opp'n to 42 Hotel's Mot. Dismiss 25 (Dkt. No. 31).[1] This Court relied on these representations in declining to dismiss this case at the pleading stage. *See L.M. I*, 717 F. Supp. 3d at 467 n.4 (crediting Hilton's argument "that plaintiff's claim is untimely insofar as it rests on any conduct occurring before April 28, 2013" but holding that "defendants' conduct remained actionable if it took place April 28, 29, or 30, 2013"). But Plaintiff has since admitted in her deposition that she was *last trafficked* at the Raleigh Hampton Inn in February 2013—ten years and two months before she filed her complaint. Statement of Material Facts ("SOMF") ¶ 6. And she admitted that she was not trafficked *at all* after she last saw Clark on April 7, 2013—ten years and twenty-one days before she filed her complaint. *Id.* ¶ 14. Therefore, her claims are indisputably time-barred.

---

[1] *See, e.g.*, *id.* at 23 ("L.M. was repeatedly trafficked at the Raleigh Hampton Inn between December 2012 and April 2013."); *id.* ("[B]ecause L.M. was trafficked at the Hampton Inn Raleigh through April 2013, the pleadings do not show that L.M.'s cause of action accrued more than 10 years before she filed suit."); *id.* at 25; Third Am. Compl. ¶ 52 (Dkt. No. 51) ("Between December 2012 to April 2013, L.M.'s trafficker repeatedly brought her to the Raleigh Hampton Inn where he forced her to perform commercial sex services for his financial benefit."); *id.* ¶ 71 ("From approximately December 2012 to April 2013, L.M. was repeatedly trafficked for sex at the Raleigh Hampton Inn."); Pl.'s Resp. to Hilton's Mot. Dismiss 3 (Dkt. No. 32) ("Between December 2012 and April 2013, L.M. was repeatedly trafficked at the Raleigh Hampton Inn." (citing Third Am. Compl. ¶ 52)); Pl.'s 2nd Suppl. Answer to Hilton's Interrog. No. 1 (Exhibit C) ("I was trafficked at the Raleigh Hampton Inn on multiple occasions from December of 2012 until around April of 2013.").

While Plaintiff testified that she was trafficked by Clark at *other hotels* after February 2013, Hilton and 42 Hotel cannot be liable for those alleged violations, as there is no evidence that they had any contact with those other hotels. Plaintiff was therefore required to bring her claims against Defendants no later than February 2023, and she was two months late. And even if Defendants could somehow be liable for alleged trafficking at other hotels, those violations are untimely too. Plaintiff testified that the last day she ever saw Clark was when they were both arrested on April 7, 2013. *Id.* And in all events the last time that she had *any* contact with him was no later than April 24, 2013. *Id.* ¶ 15. That all occurred before the April 28, 2013 deadline, so Plaintiff has no timely TVPRA claim against any hotel company, let alone Hilton.

In sum, Plaintiff's counsel repeatedly assured this Court that her claims were timely by representing that she was trafficked at the Raleigh Hampton Inn through April 2013. But as Plaintiff's own sworn testimony reveals, that was false. Her claims against Defendants accrued no later than February 2013, more than ten years before she filed her complaint. Summary judgment should be granted on this ground alone.

### B. No exception salvages Plaintiff's untimely claims.

Plaintiff may respond that the limitations period should be extended based on an equitable doctrine, such as the discovery rule or equitable tolling. Third Am. Compl. ¶ 158 (Dkt. No. 51) (invoking discovery rule). Neither applies to this case.

***Discovery Rule.*** The "discovery rule" "starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014). But that rule applies only when the text of the statute provides for it. *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019). Where a statute "omit[s]" a discovery provision, courts should not provide one. *Id.*

Limitations periods like those in the TVPRA—which begin to run when "the cause of action arose," 18 U.S.C. § 1595(c)(1)—do not incorporate the discovery rule. Considering an identically worded statute that ran from "the date on which the cause of action arose," the Supreme Court held that this language "incorporates the standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). Thus, the TVPRA does not permit a discovery rule, as several courts have recognized. *See, e.g.*, *C.C. v. Rashid*, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) ("the discovery rule does not apply to the TVPRA" (citing, *e.g.*, *Bay Area Laundry*, 522 U.S. at 201)); *J.M. v. Red Roof Franchising, LLC*, 2025 WL 2410941, at *3–7 (E.D. Cal. Aug. 20, 2025) ("declin[ing] to apply a discovery rule to [TVPRA] claims"); *Christina T. v. Bellagio, LLC*, 2025 WL 2962780, at *3 (D. Nev. Oct. 17, 2025) ("[t]he discovery rule does not apply to the TVPRA").

Even if a discovery rule could apply in TVPRA cases, it does not apply here. Per that rule, "an action accrues when the plaintiff knew or should have known of his injury and its cause." *Moore v. CSX Transp., Inc.*, 959 F.2d 231, at *2 (4th Cir. 1992) (FELA context). Here, Plaintiff testified that she did not realize she was being trafficked until she spoke to her lawyer in 2019. L.M. Dep. at 14:13–15, 46:11–22, 47:6–10, 53:23–54:1 (Exhibit D). But she does not contend she was unaware during her trafficking that she had experienced *an injury*, and given the nature of that alleged abuse, nor could she. Rather, her testimony reflects that she did not know her story fit the *legal* definition of "sex trafficking" until 2019. *Id.* at 46:17–18 ("I did not know what trafficking was until I spoke to my lawyer."). Under the discovery rule, however, the accrual date is not when a plaintiff learns she has been the victim of a legal wrong. *See Rotella v. Wood*, 528 U.S. 549, 555

(2000); *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Absent any evidence that Plaintiff lacked knowledge of her injury, the discovery rule cannot apply.

 ***Equitable Tolling.*** Nor can Plaintiff invoke equitable tolling. Where a statute is "subject to tolling on equitable grounds," plaintiffs must "adequately allege their entitlement to tolling." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548, 552, 554–55 (4th Cir. 2019); *see, e.g.*, *Winston v. U.S. Dep't of Educ.*, 2023 WL 8452451, at *6 (D. Md. Dec. 6, 2023); *Jordan v. Dep't of the Army*, 2019 WL 5566523, at *8 (E.D. Va. Oct. 28, 2019). Here, Plaintiff was required to allege equitable tolling—but she did not. *See, e.g.*, *C.C.*, 2025 WL 1785273, at *3–4. Because she did not plead equitable tolling in her complaint, she cannot "raise[]" it "in opposition to summary judgment." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). And she should not be given leave to amend (a fourth time) to plead equitable tolling "at summary judgment after discovery." *See Johnson v. Melvin*, 2025 WL 2834906, at *5 (E.D.N.C. Oct. 6, 2025) (Flanagan, J.). There is thus no basis for equitable tolling here.

 In all events, Plaintiff has not carried the heavy burden of showing that her claims can be equitably tolled. *See Ukor v. George Mason Univ.*, 2023 WL 4976194, at *2 (E.D. Va. Aug. 3, 2023) ("Plaintiff bears the burden to prove that equitable tolling is appropriate."). As the Fourth Circuit has explained in the TVPRA context, "[e]quitable tolling is a rare remedy available only where the plaintiff has exercised due diligence in preserving her legal rights." *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (citation modified). It is "appropriate in two circumstances: first, when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and second, when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Neither circumstance is true here.

For one, there is zero evidence that Defendants prevented Plaintiff from filing her claims. In fact, Plaintiff consulted with her lawyer in 2019, which disproves any notion that Defendants have been preventing Plaintiff from pursuing her claim. SOMF ¶ 17. And even during the alleged trafficking period, Plaintiff admitted that she spent most of the week away from Clark—spending time at home with her kids, running errands, and visiting family. *Id.* ¶ 13. Defendants could not have impeded Plaintiff from consulting with a lawyer and pursuing claims during this time.

Nor is there any evidence of an "extraordinary circumstance[] beyond [Plaintiff's] control" that prohibited her from filing her claims on time. *Cruz*, 773 F.3d at 145. Again, Plaintiff consulted with her lawyer in 2019, SOMF ¶ 17, and there is no evidence of an "extraordinary circumstance" that precluded Plaintiff's lawyer from filing the complaint for *four years*. *See Smith v. Davis*, 953 F.3d 582, 599 (9th Cir. 2020) (en banc) (holding that for equitable tolling to apply, the plaintiff must be "reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, *up to the time of filing his claim in federal court*" (emphasis added)); *see also Lawrence v. Lynch*, 826 F.3d 198, 205 (4th Cir. 2016) (requiring an immigration petitioner to have "'acted with due diligence during the entire period' he sought to toll"); *Blue v. Medeiros*, 913 F.3d 1, 10 (1st Cir. 2019) (requiring that a habeas petitioner exercise diligence until "the date he filed his *habeas* petition").

This case is time-barred. The Court should grant summary judgment.

## II. Plaintiff's "participant" claims fail on the merits.

Even if Plaintiff's claims were timely, they fail on the merits. She primarily advances a "participant" claim, which requires her to prove (1) that Hilton "participat[ed] in a venture"; (2) "that venture violated the TVPRA as to [Plaintiff]"; (3) that Hilton "knew or should have known that the venture violated the TVPRA as to [Plaintiff]"; and (4) that Hilton "knowingly benefited" from its participation in that venture. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir.

2021) (citing 18 U.S.C. § 1595(a)); *see also L.M. II*, 2024 WL 4204906, at *3 (citing same elements). On these elements, Plaintiff falls well short.

### A. Hilton did not participate in a venture that trafficked plaintiff.

Plaintiff principally claims that Hilton "participat[ed] in a venture, in the form of a continuous business relationship with sex traffickers at the [Raleigh Hampton Inn]." Third Am. Compl. ¶ 110 (Dkt. No. 51) ("Venture 1"). But she also proposes a second venture theory: Hilton and 42 Hotel "participat[ed] in a commercial venture with one another operating the Raleigh Hampton Inn." *Id.* ¶ 121 ("Venture 2"). Both "Venture 1" and "Venture 2" fail as a matter of fact and law.

*Venture 1.* To begin, there is not a shred of evidence to support that Hilton participated in a venture with Plaintiff's trafficker, Clark, under any metric.

This Court held that Plaintiff plausibly pleaded Hilton's "participation in a venture" with her trafficker under the "continuous business relationship" theory. Third Am. Compl. ¶ 110 (Dkt. No. 51); *see* Order Granting Pl.'s Mot. Alter J. 8 (Dkt. No. 48). That theory posits that "repeatedly renting rooms to people hotels should have known were engaging in sex trafficking satisfies the 'participation in a venture' element." Order 8 (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019)); *see L.M. I*, 717 F. Supp. 3d at 470 n.7 (citing *M.A.*, 425 F. Supp. 3d at 968–69); *L.M. II*, 2024 WL 4204906, at *7 (citing *M.A.*, 425 F. Supp. 3d at 968). After all, this theory posits, "[w]here a defendant hotel 'provides assistance, support, or facilitation to the trafficker through such a "continuous business relationship," a court or jury may infer that the participant and trafficker have a "tacit agreement" that is sufficient for "participation"

under Section 1595.'" *S.A.S.*, 2025 WL 2306579, at \*11 (quoting *G.G. v. Salesforce.com*, 76 F.4th 544, 559 (7th Cir. 2023)).[2]

"At the Rule 12(b)(6) stage, where the Court is required to presume the truth of [Plaintiff's] allegations, the Court found her complaint plausibly alleged this element against [Hilton]." *Id.* But Plaintiff "has not been able to sustain these allegations with evidence sufficient to survive summary judgment." *Id.* That is true for at least four reasons.

*First*, there is no evidence of any "business relationship" *at all*. Critically, Hilton's business records reveal that neither Clark nor anyone by the name of "Santana" stayed at the Raleigh Hampton Inn during the alleged trafficking period. C. Cessna Decl. Supp. Def.'s Mot. Summ. J. ¶¶ 5–6 (Exhibit B); SOMF ¶ 7. The absence of such records is affirmative "evidence" that "prove[s] that the matter did not occur"—i.e., that Plaintiff and her trafficker did not rent a room at the hotel. FED. R. EVID. 803(7); *see also S.A.S.*, 2025 WL 2306579, at \*11 (granting summary judgment where hotel defendants "conducted a reservation system review reaching back to" the alleged trafficking period, "searched both for [the plaintiff's] name, as well as several other names provided in connection with the suit," and found no stay records supporting Plaintiff's allegations). That is fatal to Plaintiff's claims, all of which depend on room rentals to Plaintiff's trafficker. *See L.M. II*, 2024 WL 4204906, at \*1–2.

To be sure, Plaintiff testified that she was trafficked on six occasions at the hotel. SOMF ¶ 8. But because that testimony is squarely contradicted by objective, documentary evidence showing that she did *not* stay at the property (*see* FED. R. EVID. 803(7)), it cannot carry her burden

---

[2] Though the Court disagreed, Hilton continues to maintain that "this test is not set out in the statute or described in [the better reasoned] caselaw." *K.H. v. Riti, Inc.*, 2024 WL 505063, at \*2 & n.5 (11th Cir. Feb. 9, 2024) (citing *Red Roof Inns*, 21 F.4th 714); *see L.M. II*, 2024 WL 4204906, at \*5–6 (rejecting *K.H.*'s rationale).

at summary judgment. As this Court once held, a "plaintiff's account" of being assaulted was "blatantly contradicted by the uncontested medical records establishing no assault occurred." *McClary v. Wheeler*, 2021 WL 4447631, at *4 (E.D.N.C. Sept. 28, 2021) (Flanagan, J.) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Applied here, "[P]laintiff's account" of repeated room rentals to her trafficker is "blatantly contradicted by the uncontested [room] records establishing no [rentals] occurred." *See id.*; *see also, e.g.*, *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) (granting summary judgment where the defendant's records refuted the plaintiff's testimony that "several" "incidents occurred" across certain dates).

*Second*, even crediting Plaintiff's contradicted testimony, it is not sufficient to sustain the participation in a venture element. Plaintiff testified that she was at the Raleigh Hampton Inn only six times over four months. SOMF ¶¶ 6, 8. Further, she testified that she never stayed more than one day, or overnight, or even for more than a couple hours each time. *Id.* ¶ 8. These scattered, infrequent stays do not establish a "continuous business relationship" between the hotel and her trafficker. *S.A.S.*, 2025 WL 2306579, at *12 ("[W]ithout any evidence of [the plaintiff] being trafficked for even two consecutive nights . . . a reasonable jury could not infer 'a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.'"). Nor do they qualify as "participation in a venture"—i.e., "[taking] part in a common undertaking or enterprise involving risk and potential profit"—under *any understanding* of the term. *L.M. II*, 2024 WL 4204906, at *3 (quoting *Red Roof Inns*, 21 F.4th at 725). As one court held, "a total of only eleven nights"—"at a property that has numerous rooms for rent 365 nights a year"—was an insufficient "level of repeat business" to "say that those rentals indicate[d]

a special relationship or common venture." *G.W.*, 739 F. Supp. 3d at 1251 (citing *Red Roof Inns*, 21 F.4th at 726).

*Third*, in all events, there is no evidence to suggest that the hotel provided anything other than a room on the same terms as any other guest. This Court has adopted *G.G.*'s understanding of the "participation in a venture" standard. *See L.M. II*, 2024 WL 4204906, at *7 (citing *G.G.*, 76 F.4th at 559–60). But *G.G.* made clear that sales of "common products or services" do *not* amount to unlawful participation in a venture. *G.G.*, 76 F.4th at 562; *see T.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) ("*G.G.* . . . said that, to be a 'participant' for purposes of § 1595, a defendant must be more than 'an arms-length seller of off-the-shelf products' to the venture that violated § 1591(a)."). Instead, under *G.G.*, "the alleged participant [must] have an ongoing interest in the success of a specific venture and elect to further the ends of the venture *beyond what would reasonably be expected in an ordinary commercial transaction*." *S.M.A. v. Salesforce, Inc.*, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024) (emphasis added).[3]

Here, even crediting Plaintiff's allegation that Clark rented rooms at the Raleigh Hampton Inn, there is no evidence that such room rentals were anything other than the typical arms-length commercial transaction. Per Plaintiff's own testimony, the hotel did not set aside a special room for her and Clark. SOMF ¶ 9; *contra Does 1–4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023) (hotel employees "book[ed] suspected sex workers in rooms located in the back

---

[3] *See, e.g.*, *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 408, 415 (D.C. Cir. 2024) (explaining that "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture," even where the defendant has "full knowledge" of the counterparty's trafficking violations); *Mueller v. Deutsche Bank AG*, 777 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2025) (rejecting claim that a bank "participated in a venture" under § 1595(a) by providing "financial services" to terrorists, even though the bank earned "higher fees" from them).

of the hotel where they would be less visible to guests"). And there is no evidence that the hotel provided special services to Plaintiff's trafficker, "such as extra housekeeping services and excessive towels," that "it did not provide to the general public." *T.S.*, 2024 WL 3927382, at \*10.

*Finally*, even if Clark and *the hotel* participated in a venture, Clark and *Hilton* did not. Hilton, as a franchisor, did not own or operate the Raleigh Hampton Inn—Defendant 42 Hotel did. SOMF ¶¶ 2–4. And there is absolutely *no evidence* in the record that Hilton had any relationship with Clark, so Hilton could not have participated in any sort of venture with him. *See Red Roof Inns*, 21 F.4th at 727 (allegations "that the franchisors investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees" do not "suggest that the franchisors participated in an alleged common undertaking or enterprise with the [plaintiffs'] sex traffickers"); *G.G.*, 76 F.4th at 562 (noting "franchisor defendants" are "one step removed from the sex traffickers (i.e., street-level trafficker – > hotel – > hotel franchisor)") (citing *Red Roof Inns*, 21 F.4th at 727); *S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 777–78 (N.D. Ohio 2024) ("[I]t is clear that a defendant cannot 'take part in or share with' a sex trafficking venture unless that defendant has interaction with that venture. . . . As franchisors and corporate parent companies, Defendants are several steps removed from daily hotel operations.").

**Venture 2.** Plaintiff's second theory is that Hilton participated in a venture with its franchisee, 42 Hotel (and not traffickers). Third Am. Compl. ¶¶ 124–25 (Dkt. No. 51).[4] The main flaw in Plaintiff's "Venture 2" theory is that none of the venture members—i.e., Hilton or 42 Hotel—criminally trafficked her. *L.M. II*, 2024 WL 4204906, at \*4 (holding that "the venture

---

[4] Though the Court disagreed, Hilton continues to maintain that a TVPRA defendant cannot participate in a venture with its own agents and affiliates, as in the RICO context. *See L.M. II*, 2024 WL 4204906, at \*5–6.

itself" must have "violated § 1591, meaning at least one party thereto must have done so"); *G.G.*, 76 F.4th at 553 (requiring "the existence of a venture that violated Section 1591"). "Plaintiff does not plead that Hilton itself violated § 1591," so she must prove that 42 Hotel did. *L.M. II*, 2024 WL 4204906, at *5.

It did not. The Court already held at the pleadings stage that 42 Hotel did not violate § 1591(a)(1), which "criminalizes anybody who 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means,' a person knowing or with reckless disregard that force or fraud will be used to cause that person to engage in commercial sex." *Id.* (quoting 18 U.S.C. § 1591(a)(1)). "The only verb in the section that could apply to 42 Hotel," the Court explained, "is 'harbors,'" which "in the criminal context, does not mean simply 'to house.'" *Id.* (citing *Reyes v. Waples Mobile Home Park Ltd.*, 91 F.4th 270, 278 (4th Cir. 2024)). Since "housing" Plaintiff is the most 42 Hotel can be said to have done (though the record refutes even that, SOMF ¶ 7), it cannot "be liable under § 1591(a)(1)." *L.M. II*, 2024 WL 4204906, at *5.

The Court did hold that Plaintiff plausibly alleged that 42 Hotel violated § 1591(a)(2), "which penalizes 'benefit[ting]' from participation in a venture which engaged in an act described in § 1591(a)(1)." *Id.* On this double-venture theory, Hilton is supposedly liable because it participated in a § 1595(a) venture with 42 Hotel, which in turn participated in a § 1591(a)(2) venture with Clark. *See* Third Am. Compl. ¶ 125 (Dkt. No. 51).[5] As explained above, there is no evidence that 42 Hotel participated in any venture with Clark, *supra* Part II.A, let alone a § 1591(a)(2) venture, which requires the defendant to "*knowingly* assist[], support[], or facilitat[e]

---

[5] Initially, this theory is legally defective. Under this theory, anyone who does business with a hotel—like "the utility company that furnishes electricity to the hotel, the contractor who plows the hotel's parking lot, and the vendor who services the hotel's vending machines"—would be a "'participant' for purposes of § 1595," whenever the hotel rented a room to a suspected trafficker. *T.S.*, 2024 WL 3927382, at *10. "[T]his cannot be what Congress intended." *Id.*

a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added).  After all, participation in a § 1591(a)(2) venture—which is a federal crime—requires that "the defendant must have actually 'engaged in some aspect of the sex trafficking.'"  *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).

Here, there is no evidence that 42 Hotel knowingly assisted or facilitated Clark's § 1591(a)(1) violations.  Again, Hilton's room records conclusively show that neither Plaintiff nor Clark stayed at the Raleigh Hampton Inn during the alleged trafficking period.  C. Cessna Decl. Supp. Def.'s Mot. Summ. J. ¶¶ 5–6 (Exhibit B).  And apart from the absence of room records, Plaintiff testified that she stayed at the hotel only a couple hours on six times over four months, which hardly establishes a shared venture between 42 Hotel and Clark.  *Supra* Part II.A.  Nor does anything in the record show that 42 Hotel staff "kn[ew]" or "reckless[ly] disregard[ed]" that Plaintiff was being trafficked.  18 U.S.C. § 1591(a)(2).  *See infra* Part II.B; *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at \*2 n.1 (E.D. Va. July 22, 2020) ("Section 1591 imposes an actual knowledge requirement on participation for criminal liability for both perpetrators and beneficiary perpetrators.").

In sum, Plaintiff has not carried her burden to prove that the hotel—much less Hilton, as a franchisor—participated in a venture with a sex trafficker.  Summary judgment is warranted.

### B.     Hilton did not knowingly benefit from participating in a venture that trafficked Plaintiff.

The defendant must also have "knowingly benefit[ed]" as a result of its participation in a venture.  18 U.S.C. § 1595(a); *L.M. I*, 717 F. Supp. 3d at 468; *see Red Roof Inns*, 21 F.4th at 724 (requiring that "the defendant knew it was receiving some value from participating in the alleged venture"); *see also Reddit*, 51 F.4th at 1145 (explaining that the "knowingly benefit" element requires "a causal relationship").  That element is not satisfied here for several reasons.

*First*, the evidence conclusively shows that neither Plaintiff nor her trafficker rented a room at the Raleigh Hampton Inn. SOMF ¶ 7. And the hotel could not have knowingly received a "financial benefit" if it never rented a room to them. *Second*, even if a room were rented at the Raleigh Hampton Inn for the purpose of sex trafficking, that would not establish that Hilton *knowingly* benefitted. After all, Hilton's own records do not reflect that it ever received revenue from that rental. Again, the lack of such records is affirmative "evidence" that "prove[s]" that the rentals "did not occur." FED. R. EVID. 803(7); *see In re Apex Exp. Corp.*, 190 F.3d 624, 635 (4th Cir. 1999) ("The absence of business records can be used as evidence to prove the non-existence of such a record."). *Third*, assuming again that a rental occurred, Hilton would not have received a direct financial benefit from it—42 Hotel would have. While 42 Hotel pays Monthly Program and Royalty Fees to Hilton, SOMF ¶ 3, that does not amount to a "knowing[]" benefit "*from* participation in a venture" with a particular guest. 18 U.S.C. § 1595(a) (emphasis added). Rather, the franchise fees result from an "arms-length transaction" between two companies. *Apple*, 96 F.4th at 415; *see Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 644 (9th Cir. 2025) (holding that Twitter did not "knowingly benefit[] from a child-pornography trafficking venture" even though "Twitter profits from all the posts on its website [and] knew the posts at issue here contained child pornography").

## C. Hilton did not have actual or constructive knowledge of Plaintiff's trafficking.

Plaintiff must also prove "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *L.M. I*, 717 F. Supp. 3d at 468 (quoting *Red Roof Inns*, 21 F.4th at 719). In other words, there must be evidence that Hilton "knew or should have known" that any venture of which it was supposedly a part "harbor[ed]" Plaintiff to "cause [her] to engage in a commercial sex act" through "force," "fraud," or "coercion." 18

U.S.C. §§ 1591(a), 1595(a). Plaintiff's own testimony refutes the possibility that the hotel had any such knowledge—much less Hilton.

To begin, there is absolutely no evidence that the hotel should have known of Plaintiff's trafficking. For instance, there were no "signs of physical abuse" or "actual assaults by a trafficker on the victim." *L.M. I*, 717 F. Supp. 3d at 470–73 (initially holding that Plaintiff failed to plausibly allege force, fraud, or coercion at all). To the contrary, Plaintiff admitted that Clark never physically assaulted her—at the hotel or anywhere else. SOMF ¶ 12; *contra Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel staff allegedly saw trafficker "grab" or "kick" the plaintiff or ignore her "plea[s] for help in escaping"). Plaintiff claims that she checked in at the hotel with Clark only twice, and there were no abnormalities with those check-ins. SOMF ¶ 9. Clark did not request a specific room. *Id.*; *contra C.B. v. Naseeb Invs., Inc.*, 748 F. Supp. 3d 1338, 1362 (N.D. Ga. 2024) (trafficker "requested a second room right next to his own room on a per-night basis and Defendant apparently heeded [the trafficker's] instruction that its housekeeping staff not clean the second room"). Plaintiff testified that she wore normal clothes. SOMF ¶ 11; *contra A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *5 (S.D. Ohio June 16, 2020) (plaintiff was "inappropriately dressed for travel"). And though Plaintiff testified that hotel staff called Clark by his nickname of "Santana," this Court has already held that this does not establish "knowledge of sex trafficking by force or fraud." *L.M. I*, 717 F. Supp. 3d at 472.

Nothing that occurred after check-in would have tipped off the hotel to trafficking, either. Plaintiff never communicated with staff. SOMF ¶ 12. She certainly did not tell them she was being forced to engage in commercial sex. *Id.* Plaintiff "assume[s]" that Clark "would be roaming the hallways" while she was with a john, but she "do[es] not know for sure." *Id.* ¶ 10. And she left the room tidy for housekeeping. *Id.* ¶ 11; *contra A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d

171, 189 (E.D. Pa. 2020) ("Rooms rented for trafficking were littered with multiple broken objects, used condoms, and other sex paraphernalia which would have been noticed by staff.").

Moreover, even if hotel staff somehow possessed actual or constructive knowledge, that cannot be attributed to Hilton. To impute knowledge, there must be an agency relationship. RESTATEMENT (THIRD) OF AGENCY § 5.03 reporter's notes b (2006) ("Notice of facts that a person knows is not imputed to another person in the absence of an agency relationship or other relationship that results in imputation."). And as explained below, there is no agency relationship between Hilton and 42 Hotel, *infra* Part III, much less between Hilton and the *employees* of 42 Hotel. *See* 19 WILLISTON ON CONTS. § 54:6 (4th ed.) (noting the "general" rule that "a franchisor is not the employer of the employees of a franchisee").

Finally, Hilton acknowledges that the Court previously found that Plaintiff plausibly pleaded Hilton's constructive knowledge in part because it

> negligently failed to train or supervise its employees to detect sex trafficking, relied upon ineffective anti-trafficking policies even once they were shown to have led to trafficking, used its power over its franchisee to create a minimally risky venue for traffickers, permitted traffickers to reserve rooms in cash without identification, and superintended the traffickers' internet usage which showed evidence of trafficking activities.

*L.M. II*, 2024 WL 4204906, at *6. For several reasons, this theory does not satisfy Plaintiff's summary-judgment burden. *First*, there is no evidence to support these allegations. *Second*, even if such evidence existed, it would not show that Hilton had any actual or constructive knowledge *of Plaintiff's trafficking*. *See L.M. I*, 717 F. Supp. 3d at 468 (requiring knowledge "as to the plaintiff"). Indeed, it does not evince knowledge of *anyone's* trafficking. And *third*, many of these allegations—such as failure to train or supervise internet activity—presuppose that the TVPRA "impose[s] an affirmative duty to police and prevent sex trafficking." *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021). Yet as courts widely agree,

there is no such duty. *Id.* (collecting cases); *see, e.g.*, *A.D.*, 2020 WL 8674205, at \*3 ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").

### III.     Plaintiff's "vicarious liability" claims also fail on the merits.

Plaintiff also claims that Hilton is vicariously liable for the TVPRA violations of 42 Hotel. Third Am. Compl. ¶¶ 145–50 (Dkt. No. 51).  There are three problems with this.  *First*, as explained above, 42 Hotel did not violate the TVPRA, so Hilton cannot be vicariously liable for anything.  Plaintiff's claim against 42 Hotel is time-barred, just like its claim against Hilton.  *Supra* Part I.  And on the merits, 42 Hotel did not participate in a venture with Clark, *supra* Part II.A; it did not knowingly benefit from any participation, *supra* Part II.B; and it did not have actual or constructive knowledge of Plaintiff's trafficking, *supra* Part II.C.

*Second*, Plaintiff cannot carry her burden to demonstrate an agency relationship between Hilton and 42 Hotel, which is a prerequisite to holding Hilton vicariously liable.  *Atrium of Princeton, LLC v. NLRB*, 684 F.3d 1310, 1315 (D.C. Cir. 2012) ("[T]he party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." (quoting RESTATEMENT (THIRD) OF AGENCY § 1.02 cmt. d (2006))).  To the contrary, it is settled that "relationships between . . . franchisors and franchisees" "do not by themselves create relationships of agency" or liability.  RESTATEMENT (THIRD) OF AGENCY § 1.02 cmt. a (2006). Indeed, the franchise agreement between Hilton and 42 Hotel disclaims any agency relationship. SOMF ¶ 3.  Even if this is not a silver bullet, *see L.M. II*, 2024 WL 4204906, at \*10, it is at least highly relevant in assessing the existence of an agency relationship, RESTATEMENT (THIRD) OF AGENCY § 1.02 cmt. b (2006) (noting that similar statements "are relevant to determining whether the parties consent to a relationship of agency," albeit not "determinative").

Nothing else in the record about the franchise agreement or Defendants' course of performance suggests an agency relationship.  "An essential element of agency is the principal's

right to control the agent's actions." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(1) (2006). The Raleigh Hampton Inn, however, "is independently owned and operated. Hilton did not and does not own, manage or control the day-to-day operations of the Raleigh Hampton Inn." Hilton's Resp. to Pl.'s Interrog. No. 1 (Exhibit A). While the franchise agreement allows Hilton to maintain some standards at the hotel, "setting standards in an agreement for acceptable service quality does not of itself create a right of control." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(1) (2006). Rather, these standards are designed "to avoid trademark dilution" and "do not control the franchisee [hotel's] day-to-day operations, such as hiring or firing employees, managing employee schedules, and other onsite management." *S.C.*, 728 F. Supp. 3d at 780–81 (applying "Ohio agency law" but observing that it "leads to the same outcome" as federal common law and citing the Restatement); *see also K.O.*, 728 F. Supp. 3d at 649–50 ("'Facts tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand' have been found to be insufficient to establish 'complete control over the day-to-day operations of the franchisee's business.'" (citing Michigan cases but also noting "that the analysis is largely the same under federal common law")).[6]

*Third*, to the extent an agency relationship existed, 42 Hotel's alleged TVPRA violations were not within its scope. Traditional agency principles provide that imputation is only appropriate where the agent's course of conduct is within the scope of its authority, which is not the case where the agent "engaged in an independent course of conduct not intended to further any purpose of the

---

[6] The Third Amended Complaint contains a lone allegation that Hilton was a "joint employer" with 42 Hotel. ¶ 151. This Court noted that "agency and joint employer status are virtually identical under federal common law." *L.M. II*, 2024 WL 4204906, at *9. Because Plaintiff cannot establish an agency relationship, she cannot establish a joint-employer relationship either. *See S.C.*, 728 F. Supp. 3d at 782 (rejecting joint-employer theory because "no record evidence shows Defendants could hire or fire" or "set work schedules for the franchisee hotels' employees").

[principal]." RESTATEMENT (THIRD) OF AGENCY § 7.07 cmt. b (2006); *see also id.* § 5.04 ("[N]otice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter."). Hilton condemns all forms of trafficking and is an industry leader in fighting incidents of sex trafficking that have plagued the hospitality industry. To the extent 42 Hotel somehow knowingly benefited from participating in a venture with sex traffickers, that would have grossly exceeded the scope of its contractual relationship with Hilton. *See* Franchise License Agreement, Hampton Inn–Raleigh-North, § 6.c (Dkt. No. 54-1) (42 Hotel is "at all times responsible for the management of the Hotel's business"); *id.* § 15 (42 Hotel is "an independent contractor").

For any one of these reasons, Hilton is not vicariously liable under the TVPRA.

## Conclusion

For the foregoing reasons, the Court should grant summary judgment in Hilton's favor and dismiss it from the case.

Dated: November 19, 2025

Respectfully submitted,

/s/ Brandon S. Neuman

Brandon S. Neuman
NELSON MULLINS RILEY &
SCARBOROUGH LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: +1.919.329.3878
Email:  brandon.neuman@nelsonmullins.com

Nicole M. Perry, *Special Appearance*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX  77002
Telephone: +1.832.239.3939
Email:  nmperry@jonesday.com

Bethany K. Biesenthal, *Special Appearance*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL  60606
Telephone: +1.312.782.3939
Email:  bbiesenthal@jonesday.com

Ana Maria Cristina Pérez Soto, *Special Appearance*
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: +1.305.714.9700
Email:  cperezsoto@jonesday.com

ATTORNEYS FOR DEFENDANT HILTON
DOMESTIC OPERATING COMPANY INC.

## CERTIFICATE OF WORD COUNT

I, Brandon S. Neuman, certify that the foregoing, Defendant Hilton Domestic Operating Company Inc.'s Memorandum in Support of its Motion for Summary Judgment, is 7,291 words, in compliance with Local Rule 7.2(f).

*/s/ Brandon S. Neuman*
Brandon S. Neuman


## CERTIFICATE OF SERVICE

I, Brandon S. Neuman, certify that on November 19, 2025, I caused the foregoing, Defendant Hilton Domestic Operating Company Inc.'s Memorandum in Support of its Motion for Summary Judgment, to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brandon S. Neuman*
Brandon S. Neuman