UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

|  |  |
|---|---|
| Jane Doe (L.M.) <br><br> Plaintiff, <br><br> v. <br><br> 42 Hotel Raleigh, LLC d/b/a Hilton Hampton Inn and Hilton Domestic Operating Company Inc., <br><br> Defendants. | Case No. 5:23-cv-00235-FL |

## DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Hilton Domestic Operating Company Inc. ("Hilton") hereby submits the following Statement of Material Facts ("SOMF") in support of its Motion for Summary Judgment.

**The Parties**

1. Plaintiff filed this lawsuit on April 28, 2023. *See* Third Am. Compl. (Dkt. No. 51). She alleges that she was the victim of sex trafficking at a Hampton Inn located at 1001 Wake Towne Drive, Raleigh, North Carolina 27609, the Raleigh Hampton Inn. *Id.* ¶ 1.

2. Defendant Hilton Domestic Operating Company Inc. is a parent company of the franchisor of the Raleigh Hampton Inn. Hilton's Answers and Affirm. Defenses to Third Am. Compl. ¶ 15 (Dkt. No. 63). Defendant 42 Hotel Raleigh, LLC is the franchisee of the Raleigh Hampton Inn. 42 Hotel's Answer to Pl.'s Third Am. Compl. ¶ 14 (Dkt. No. 55).

3. Defendants' business relationship is governed by a franchise agreement, in which Hilton granted 42 Hotel a license to operate the Raleigh Hampton Inn under its licensed brand. *See generally* Franchise License Agreement, Hampton Inn–Raleigh-North (Dkt. No. 54-1). The

agreement requires 42 Hotel to pay a "Monthly Program Fee" and a "Monthly Royalty Fee." *Id.* § 7.a. The agreement also provides that 42 Hotel is "an independent contractor," and "that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement." *Id.* § 15.a.

4. Consistent with the franchise agreement, 42 Hotel is the owner and operator of the Raleigh Hampton Inn. Hilton did not and does not own, manage, or control the day-to-day operations of the Raleigh Hampton Inn. Hilton's Resp. to Pl.'s Interrog. No. 1 (Exhibit A).

**Plaintiff's Alleged Trafficking**

5. Plaintiff was allegedly trafficked by Kendale Clark, who was also known by the alias of "Santana." Pl. L.M. Dep. Tr. ("L.M. Dep.") at 34:22–35:4 (Exhibit D). Clark was Plaintiff's only alleged trafficker. *Id.* at 44:1–3.

6. Plaintiff claims that Clark rented rooms and forced her to engage in commercial sex at the Raleigh Hampton Inn between November 2012 and February 2013. *Id.* at 43:16–24, 59:2–9.

7. At all relevant times, Hilton maintained a database of stays of guests at the Raleigh Hampton Inn. C. Cessna Decl. Supp. Def.'s Mot. Summ. J. ¶ 3 (Exhibit B). Among other information, a guest's stay record shows the name on the reservation as well as the check-in and check-out dates. *Id.* ¶ 4. A comprehensive search of these business records at the Raleigh Hampton Inn revealed no stays by Clark, "Santana" (Clark's alleged alias), or Plaintiff during the period in which Plaintiff claims she was trafficked at the property (November 2012 to February 2013). *Id.* ¶¶ 5–6. Plaintiff also testified that she does not have any record of staying at the Raleigh Hampton Inn. L.M. Dep. at 59:13–15 (Exhibit D).

8. Setting aside the absence of stay records, Plaintiff's testimony suggests a very limited number of stays. More specifically, Plaintiff testified that she was trafficked at the Raleigh

Hampton Inn about six times in total. *Id.* at 42:14–18. And each of her stays at the Raleigh Hampton Inn lasted for "just a couple hours." *Id.* at 72:12–15.

9. On two of the six occasions, she was in the lobby with Clark as he checked in and paid for the room. *Id.* at 61:14–25; *see* Pl.'s 2nd Suppl. Answer to Hilton's Interrog. No. 1 (Exhibit C); Pl.'s Decl. Verifying Pl.'s 2nd Suppl. Answers and Objections to Hilton's Interrogatories (Exhibit E). A room was never booked under Plaintiff's name. L.M. Dep. at 64:22–24 (Exhibit D). Plaintiff does not know what Clark said to the hotel staff, or what the staff said to Clark, except that they called him "Santana." *Id.* at 69:5–12, 101:1–15. And Clark did not request specific rooms within the hotel. *Id.* at 64:25–65:1.

10. Once check-in was complete, Clark would walk Plaintiff to the room. *Id.* at 64:5–7. He would leave while johns were there, and then reappear once the john left. *Id.* at 64:8–13. Plaintiff "assume[s]" that Clark "would be roaming the hallways" while she was with a john, but she "do[es] not know for sure." *Id.* at 59:25–60:5.

11. On all six occasions, Plaintiff wore "[r]egular clothes" to the property—"[p]ants" and "a shirt." *Id.* at 67:6–15. She never saw housekeeping clean the room. *Id.* at 72:16–19, 72:24–73:2. And because she is "a pretty well-rounded, clean person," "the room was never messy" when she left it. *Id.* at 72:20–23.

12. Plaintiff never interacted with or talked to any hotel staff at the Raleigh Hampton Inn, much less told them she was being forced to engage in commercial sex. *Id.* at 66:16–67:2, 95:24–96:17. Indeed, Plaintiff did not speak to anyone to avoid being caught engaging in commercial sex. *Id.* at 68:4–13. She never asked anyone at the hotel for help or informed them that she was a trafficking victim, *id.* at 67:3–5, and she never asked hotel staff to call the police for

her. *Id.* at 72:6–8. In fact, Clark never physically assaulted her at the Raleigh Hampton Inn. *Id.* at 73:3–5. And he was not physical with Plaintiff *at all*. *Id.* at 45:4–6.

13. More generally, Plaintiff engaged in commercial sex for Clark once per week, so she spent much of the week apart from him. *Id.* at 57:22–58:6. Plaintiff mostly remained in the house, where she lived with her three children. *Id.* at 38:19–39:2, 58:4–6. She sometimes ran errands to the grocery store and Walmart. *Id.* at 58:4–13. She also saw her other family members, including her mother, on a regular basis. *Id.* at 17:23–18:7. Plaintiff never told anyone that she was a trafficking victim or engaged in prostitution, including her mother. *Id.* at 17:18–18:9, 58:16–20, 80:15–81:18.

14. On April 7, 2013, Plaintiff and Clark were arrested at a Days Inn in an undercover sting operation. *Id.* at 47:15–49:17; Pl.'s 2nd Suppl. Answer to Hilton's Interrog. No. 2 (Exhibit C). Plaintiff never saw Clark again after the April 7 arrest. L.M. Dep. at 48:3–5 (Exhibit D). Nor did she ever engage in commercial sex after this arrest. *Id.* at 41:18–42:3, 57:14–16, 75:12–15.

15. Plaintiff testified that sometime between April 22 and April 24, Clark called her from jail, telling her not to say anything incriminating about their relationship. *Id.* at 52:9–53:15. Plaintiff testified that she has not spoken to Clark since that call, nor has she seen him or engaged in commercial sex for him. *Id.* at 53:16–22.

16. Plaintiff testified that after her arrest, she never told law enforcement that she was being trafficked or forced to sell sex. *Id.* at 79:25–80:6. To this day, she has not reported Clark to the police. *Id.* at 92:3–5.

17. Plaintiff first contacted her lawyer in this case in 2019. *Id.* at 14:13–15, 53:23–54:1. Yet the complaint was not filed until April 28, 2023. SOMF ¶ 1.

Dated: November 19, 2025

/s/ Brandon S. Neuman
Brandon S. Neuman
North Carolina Bar No. 33590
NELSON MULLINS RILEY &
SCARBOROUGH LLP
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: +1.919.329.3878
Email: brandon.neuman@nelsonmullins.com

Respectfully submitted,

Nicole M. Perry, *Special Appearance*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: +1.832.239.3939
Email: nmperry@jonesday.com

Bethany K. Biesenthal, *Special Appearance*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Email: bbiesenthal@jonesday.com

Ana Maria Cristina Pérez Soto, *Special Appearance*
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: +1.305.714.9700
Email: cperezsoto@jonesday.com

ATTORNEYS FOR DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.

# CERTIFICATE OF SERVICE

I, Brandon S. Neuman, certify that on November 19, 2025, I caused the foregoing, Defendant Hilton Domestic Operating Company Inc.'s Statement of Material Facts in Support of its Motion for Summary Judgment, to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brandon S. Neuman*
Brandon S. Neuman